1998 ME 152

**Mark T. ANCHORS**

v.

**David L. MANTER, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 24, 1997.

Decided June 17, 1998.

---

Elliott L. Epstein, Isaacson & Raymond, Lewiston, for plaintiff.

David L. and Roberta T. Manter, Wayne, for defendants.

Before ROBERTS, and CLIFFORD, RUDMAN, DANA and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] David Manter and Roberta Manter appeal from a judgment entered in favor of Mark Anchors following a non-jury trial in the Superior Court (Kennebec County, *Atwood, J.*). The Manters contend that the court erred: (1) in concluding that Anchors has a right-of-way in a road known as the Woods Road as measured by Anchors's surveyor across the Manters' land, and that the right-of-way includes reasonable motor vehicle use; (2) in enjoining the Manters from interfering with Anchors's use of the right-of-way; (3) in awarding compensatory and punitive damages to Anchors for interference with the use of the right-of-way and in finding against the Manters on their counterclaim. Finding no error or abuse of discretion, we affirm the judgment.

[¶ 2] There are four property interests located in Fayette that relate to this litigation: (1) lot B, the servient estate, owned by the Manters; (2) lot A, a small parcel contiguous to lot B; (3) an island in Hales Pond called Cook's Island, owned by Anchors that is the dominant estate appurtenant to the easement; and (4) the Woods Road, a road running across lot B from the Young Road to Hales Pond, that the court found to be the easement to the island.

[¶ 3] Anchors's claim to a right-of-way over the Manters land stems from (1) a conveyance to Robert Ingham, the then-owner of Cook's Island, from Doris Ingham [1] of a right-of-way across what is now known as lot B to Hales Pond; [2] and (2) the reservation of that same right-of-way over lot B in a conveyance of lot B, by deed from Doris Ingham to the Manters' ultimate predecessor in title, Clifton L. Merrill. That deed reserved a right-of-way to Hales Pond in favor of the grantor to be used in common by Olive Moo-

---

1. Robert Ingham owned Cook's Island by virtue of a deed from Doris Ingham, his mother, dated May 5, 1966.

2. That right-of-way is described as follows:
   a right-of-way running in a general westerly direction from the so-called Young Road over and across the land of Clinton L. Merrill to Hales Pond; said right-of-way having been reserved in the Quit–Claim Deed with Covenant executed by the Grantor in favor of said Clifton L. Merrill under even date herewith; and the right-of-way hereby conveyed shall be in common with Olive Mooney, her heirs and assigns forever and with others who may in the future be granted a like right.

ney and Robert C. Ingham, their heirs and assigns.[3] The conveyance of the right-of-way to Robert Ingham and the deed to Merrill containing the reservation are both dated and were executed on April 30, 1968.

[¶ 4] Several months before Anchors purchased the island, he and the Manters discussed relocating the right-of-way. They talked about Anchors relinquishing his rights in the right-of-way on the Woods Road and purchasing a strip of land on the edge of the Manters land for his access to the island. The negotiations broke down, however.

[¶ 5] In the spring of 1989 Anchors discovered that the Manters had blocked his access to the right-of-way with boulders. On one occasion, David Manter, brandishing a hammer menacingly, informed him that he would now be restricted to foot access. After Anchors's attempted use of the right-of-way was again blocked in the spring or summer of 1991, when David Manter threatened to protect his property with a gun, Anchors returned with a police officer later that summer and cleared the Woods Road, which was starting to grow in. The same thing happened again in October of 1992, with Anchors having to get help from a state trooper, who called a wrecker to move a trailer the Manters had used to block the right-of-way. Again on another occasion, the right-of-way was blocked with boulders. Anchors testified that five or six times since 1989 he travelled to Hales Pond from Rhode Island, but due to the Manters conduct was unable to get to his island, and estimated his travel costs at $100 per trip. David Manter stated that he believed no one but he was entitled to drive a vehicle on the Woods Road, and that he had blocked it with boulders, trailers, wood, and other items "for the purpose of keeping anybody from going on to my prop-

erty at that location and causing me further duress (sic)."

[¶ 6] Anchors brought this action in 1994, seeking a declaratory judgment that he holds a right-of-way over lot B, for access to his island. Anchors sought injunctive relief prohibiting the Manters from interfering with the right-of-way. He also sought compensatory and punitive damages. The Manters filed a counterclaim seeking declaratory and injunctive relief, as well as damages. The court concluded that the Woods Road, shown on a survey commissioned by Anchors, was an easement held in common by Anchors and the Manters, and awarded Anchors a judgment for compensatory ($400) and punitive damages ($500) caused by the Manters intentional interference with Anchors's use of the right-of-way. The court found that access by motor vehicle was a reasonable use of the easement, and enjoined the Manters from interfering with Anchors's use and maintenance of the easement for pedestrian or motor vehicle use. This appeal by the Manters followed.

I.

[¶ 7] The Manters first contend that Anchors cannot enforce the right-of-way over lot B. The reservation of the right-of-way over lot B in favor of Robert Ingham in the deed from Doris Ingham to Merrill could not benefit Robert, the Manters argue, because the right-of-way was conveyed to Robert *after* the conveyance of the servient estate to Merrill. They rely on the doctrine that a reservation benefitting one not a party to the deed cannot create any interest not previously existing, and thus Anchors should not have an easement over lot B. *See Fitanides v. Holman*, 310 A.2d 65, 67 (Me.1973) (reservation in favor of stranger to the title will not be enforced). *See also Town of Manchester v. Augusta Country Club*, 477 A.2d 1124, 1130–31 (Me.1984) ("A mere reservation in favor of one not a party to the deed cannot

---

3. The deed from Doris Ingham to Clifton Merrill conveying lot B states:

There is also reserved unto this Grantor, her heirs and assigns, and excepted out of and from this conveyance, the following described right-of-way over the premises conveyed by this deed, viz;
a right-of-way running in a general westerly direction from the so-called Young Road

across these conveyed premises to Hales Pond; said right-of-way to be used in common by Olive Mooney and Robert C. Ingham, their heirs and assigns, and others who may in the future be granted a like right, including the Grantee, his heirs and assigns.

Doris Ingham also conveyed a right-of-way over lot B to Olive Mooney, who since 1952 had owned lot A adjacent to lot B. Mooney conveyed lot A to the Manters in 1971.

create any right in interest *not previously existing*") (emphasis added); *Thompson on Real Property* § 60.03(a)(2)(ii) (1994) ("the conceptual problem underlying the existence of the rule was that the easement one wished to convey to a third person did not exist before the property was conveyed away....").[4]

[¶ 8] The conveyance of the easement by Doris Ingham to Robert Ingham, and the deed from Doris Ingham to Merrill, in which the easement was reserved were of the same date, April 30, 1968. Although the grant to Robert contains some language that could be construed to imply that the right-of-way was conveyed *after* the fee simple grant ("said right-of-way *having been reserved* in the [deed to] ... Clifton L. Merrill *under even date herewith*,") (emphasis added), given that the two documents were executed and acknowledged on the same date, before the same Justice of the Peace, construing the right-of-way grant as coming first gives effect to the grantor's intention to provide a right-of-way for her son to the pond. *See Friedlander v. Hiram Ricker & Sons*, 485 A.2d 965, 972 (Me.1984) ("[T]he cardinal rule for the interpretation of deeds [is] the expressed intention of the parties, gathered from all parts of the instrument, giving each word its due force, and read in the light of existing conditions and circumstances."). *Cf. Morrell v. Rice*, 622 A.2d 1156, 1159 (Me. 1993) (inferring that deeds signed on different dates were delivered simultaneously, in order to fulfill parties' reasonable intentions). We construe the deeds to give effect to the intent of the grantor to create an easement to benefit her son, and conclude that the easement created by the deed from Doris to Robert Ingham is enforceable by Anchors, Robert's successor in title.

## II.

[¶ 9] The Manters also contend that the right-of-way fails because when it was created there was no land adjacent to the easement holder's land and thus no appurtenant estate. They contend that Hales Pond (and not the island) is the dominant estate, and that Hales Pond is a Great Pond belonging to the State of Maine. Accordingly, the Manters argue that the easement could not run with or burden the land and is merely a covenant personal to Robert Ingham and thus is not assignable. We disagree.

[¶ 10] Easements that are intended to be personal rights and do not profess to create a benefit in favor of any land are easements "in gross," terminable at the death of the individual for whom created, and not assignable. *O'Neill v. Williams*, 527 A.2d 322, 323 (Me.1987); *see also LeMay v. Anderson*, 397 A.2d 984, 987 (Me.1979) (finding an easement in gross because the retained right-of-way in the deed "speaks only in terms of a personal benefit in favor of 'the grantor and others.'"). Easements appurtenant, by contrast, are "created to benefit the dominant tenement and therefore run[ ] with the land." *O'Neill*, 527 A.2d at 323 (giving effect to intention of parties by holding that easement was not in gross merely because the grant did not convey to grantee and "heirs"). "The traditional rules of construction for grants or reservations of easements require that whenever possible an easement be fairly construed to be appurtenant to the land of the person for whose use the easement is created." *LeMay*, 397 A.2d at 987. The general rule is stated:

> [I]f an easement is in its nature *an appropriate and useful adjunct of the land conveyed*, having in view the intention of the parties as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant and not an easement in gross. If doubt exists as to its real nature, an easement is presumed to be appurtenant and not in gross.

---

4. *See* Knud E. Hermanson and Donald R. Richards, *Maine Roads and Easements*, 48 Me.L.Rev. 197, 260 ("To prevent these [stranger to the title] problems, the grantor can convey the easement to the appropriate parties prior to the grantor's conveyance of the fee simple title in the servient estate...."). *See also* 7 *Thompson on Real Property* § 60.03(a)(2)(ii) ("To reach the desired result under the common law rule, one *could first create and convey away an easement in one action and then convey away the servient tenement in another, excepting from the conveyance that now pre-existing easement.*") (emphasis added).

25 Am.Jur.2d *Easements* § 12 (1996) (emphasis added).

[¶ 11] Although the right-of-way is described as running over Merrill's land (lot B) to Hales Pond, generally where "access to a body of water is sought for particular purposes beyond merely reaching the water, and where such purposes are not plainly indicated, a court may resort to extrinsic evidence...." *Badger v. Hill,* 404 A.2d 222, 226 (Me.1979). In this case the extrinsic evidence showing the extensive use of the right-of-way by the parties as access to Cook's Island supports the conclusion that the right-of-way across the Manter land is necessary or advantageous to the enjoyment of the island by the dominant tenement holder. Such a conclusion is consistent with Maine law.

[¶ 12] We have treated certain kinds of easements as appurtenant to the dominant estate even though not contiguous. *See Day v. McEwen,* 385 A.2d 790, 791 (Me.1978) (enforcing reserved "right of an unobstructed view" over servient tenement where dominant tenement was on the other side of a public road). The majority rule is that "a right-of-way may be appurtenant to land even though the servient tenement is not adjacent to the dominant...." M.C.D., Annotation, *May right-of-way be appurtenant where the servient tenement is not adjacent to the dominant,* 76 A.L.R. 597 (1932); *see, e.g., Verzeano v. Carpenter,* 108 Or.App. 258, 815 P.2d 1275 (1991) ("[W]e agree with the majority view that an easement may be appurtenant to noncontiguous property if both tenements are clearly defined and it was the parties' intent that it be appurtenant.") (citing 7 *Thompson on Real Property* § 60.02(f)(4)). *See also Private Road's Case,* 1 Ashm. 417 (Pa.1826) (The circumstance that a navigable river intervenes between a meadow and an island is no legal reason why a way across the former should not be appurtenant to the latter).

[¶ 13] Moreover, the factors relevant to a determination of whether an easement is in gross or appurtenant support the court's conclusion that Anchors's easement is appurtenant. These factors are: (1) whether the existence of an easement appurtenant adds to the continuing value of the dominant tenement, (2) whether successors to the servient estate have recognized the right of the dominant estate owners to use the easement, and (3) use of the language "appurtenant to my other land." *See 7 Thompson on Real Property* § 60.02(f)(5). The evidence clearly shows that the easement adds to the value of the island and recent actions of the Manters notwithstanding, that the right to use the easement to reach the island has been well recognized. The court did not err in concluding that the easement is appurtenant.

## III.

[¶ 14] The court found that evidence "showed that the right-of-way is a clearly marked woods road that is readily observable and has been used as the means of access to the pond from the Young Road for decades as acknowledged by owners of the servient estate, David Manter and Clifton Merrill, and the dominant estate, Robert Ingham and Robert Cook." The court further concluded based on the length of the right-of-way, the desirability of its use to bring boats and supplies to the water's edge, and the way it actually has been used for a considerable period of time, that the reasonable use of motor vehicles along its entire length is permitted.

[¶ 15] These findings are disputed by the Manters, who contend that the Woods Road has been used predominantly as a footpath, and that only between 1984 and 1989 was the Woods Road used regularly as a right-of-way by motor vehicles. They argue that the court erred by disregarding the circumstances of the original grant itself, and gave undue weight to subsequent usage by successive grantees.

[¶ 16] The construction of language creating an easement is a question of law. *Fine Line, Inc. v. Blake,* 677 A.2d 1061, 1063 (Me.1996). If the language of the deed is ambiguous, however, extrinsic evidence may be considered to determine the intent of the parties. *Id.* In this case, neither the specific scope of the right-of-way nor its precise location are evident on the face of the deeds. In such a case, the intention of the

parties creating the easement "is a question of fact." *Id.* at 1064. We will uphold "the trial court's determination regarding the objective manifestation of the parties' intent unless it is clearly erroneous." *Guild v. Hinman*, 1997 ME 120, ¶ 8, 695 A.2d 1190, 1193.

### A

[¶ 17] There was substantial evidence before the court as to the use of the right-of-way. David Manter testified that Doris Ingham told him that she intended the right-of-way she reserved for Robert Ingham and Olive Mooney to be limited to use on foot. Other evidence, however, including evidence from the Manters, revealed that the Woods Road showed signs of being travelled by vehicles and that the Manters were annoyed by people using vehicles on the Woods Road. Robert Cook testified that he was told the road was available for access to the island and that it could be driven on in dry weather. Testimony from other owners of the island, including Anchors, and from a real estate broker involved in a sale of the island, testified that the Woods Road was well depicted, could be and was used by four-wheel vehicles and was the means of accessing the island.

[¶ 18] The parties' intent may be gleaned not only from the use of the land before the grant, but also "the practical construction which the parties placed upon [the deed] by their conduct, by acts done by one party and acquiesced in by the other, especially when such conduct is proven to have continued for a long time...." *Guild*, 1997 ME 120 at ¶ 9, 695 A.2d at 1193 (quoting *Drummond v. Foster*, 107 Me. 401, 404, 78 A. 470 (1910)); *accord Restatement (First) of Property* § 483 (1944) (considering use made of servient tenement *after* conveyance); 28A *C.J.S. Easements* § 146 (1996). The court did not err in concluding that the Woods Road right-of-way carried with it the right to access by foot or motor vehicle.

### B.

[¶ 19] The Manters also assert that the grant of the right-of-way is so vague that

its location cannot be determined on the face of the earth and is thus void.[5] We disagree.

[¶ 20] In the face of imprecision in a grant, the same types of extrinsic evidence that can be considered for the *use* of an easement are applicable to determine its *location*. *See Perkins v. Perkins*, 158 Me. 345, 350, 184 A.2d 678 (1962). *See also LaVoie v. Marshall*, 141 Conn. 681, 109 A.2d 508, 510 (1954) (parol evidence that did not vary or alter deed was admissible to establish location of right-of-way). There was ample evidence that the Woods Road, that ran from Young Road to Hales Pond, was precisely the road referred to in the original deeds, and it was not error to find it to be the right-of-way.

### IV.

[¶ 21] The Manters also contend that the court erred in its award of compensatory damages ($400) and punitive damages ($500). We disagree. There was evidence that Anchors incurred expenses for motel costs, meals and gas, because his access to Cook's Island was prevented when the right-of-way was blocked by the Manters. *See Currier v. Cyr*, 570 A.2d 1205, 1210 (Me. 1990) (monetary award based on judgmental approximation is proper, provided the evidence establishes facts from which the amount of damages may be determined to a probability).

[¶ 22] Moreover, the court neither erred nor acted beyond its discretion in awarding punitive damages. The conduct of the Manters was outrageous and led the court to conclude that David Manter acted with malice toward Anchors in interfering with his property rights. *Grover v. Minette-Mills, Inc.* 638 A.2d 712, 718 (Me.1994).

[¶ 23] Nor did the court err in entering a judgment against the Manters on their counterclaim.

[¶ 24] Other contentions of the Manters are without merit.

---

5. The Manters contention that Anchors's claim is based on adverse possession or an easement by prescription is without merit. Anchors claims through a deeded interest in the right-of-way, not by adverse possession.