2012 ME 18

**Robert J. LAUX, et al.**

v.

**Ralph HARRINGTON, et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 11, 2012.

Decided: Feb. 21, 2012.

Frank K.N. Chowdry, Esq., Jensen Baird Gardner & Henry, Portland, on the briefs, for appellants Robert J. Laux and Cynthia A. Moran–Laux.

Robert W. Kline, Esq. (Orally), Kline Law Offices, Portland, on the briefs, for appellee and cross-appellant Ralph Harrington.

Thomas G. Mundhenk, Esq. (Orally), Mundhenk & Bell, LLC, Portland, on the briefs, for appellee James Sysko.

John A. Cunningham, Esq., Eaton Peabody, Brunswick, argued, for appellants Robert J. Laux and Cynthia A. Moran–Laux.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1]  Robert J. Laux and Cynthia A. Moran–Laux (collectively Laux) appeal, and Ralph Harrington cross-appeals,[1] from a judgment of the Superior Court (Oxford County, *Clifford, J.*) declaring the continued existence and location of a road easement in favor of Harrington over Laux's property located in the Towns of Newry and Hanover, and awarding Harrington nominal damages for Laux's interference with his use of the easement.  Laux asserts that a 1990 quitclaim deed given by Harrington's predecessor-in-title to Laux's predecessor-in-title extinguished the easement, or, alternatively, that construction on the site of its original entry point resulted in its abandonment.  Harrington contends that the court erred in excluding certain evidence at trial, resulting in its miscalculation of his damages and failure to award punitive damages.  We affirm the judgment.

---

1.  Defendant James D. Sysko did not cross-    appeal.

## I. BACKGROUND

[¶ 2] In 1962, Ralph Richardson, the grandfather of Ralph Harrington, deeded to Gerald Harrington, Ralph Harrington's father, a parcel of land in the Town of Newry. Along with the parcel, Richardson conveyed an easement:

> Including [sic] in this conveyance is a right of way over and across my Cow Pasture which is partly in the Town of Hanover and partly in said Town of Newry for access to and from said lot, and is on the condition that said right of way is subject to the said Harrington's keeping the gates and bar closed while livestock is being pastured there.

[¶ 3] In 1994, Ralph Harrington inherited the parcel. Harrington uses it primarily as a wood lot, although he also uses it for personal recreation and has considered building a camp on it. The easement benefiting the parcel burdened Richardson's land that, omitting intervening transactions not relevant here, was purchased by Erik Nelson in 1981, and then in 1993 by Laux. The servient Laux parcel is depicted on an exhibit attached to the Superior Court's judgment:

[¶ 4] As shown in the exhibit, the southern edge of the Laux parcel lies along Route 2 in the Town of Hanover, while the northern part of the parcel lies in the Town of Newry. Most of the Harrington parcel lies to the northeast of the area depicted in the exhibit; its southwest corner is the "pile of stones" on the northern bank of Stoney Brook. The road at issue

in this case is shown as a light dashed line, labeled "woods road."

[¶ 5] Prior to 2008, Harrington accessed his lot using a road across land owned by Robert Chadbourne. Harrington's access was permissive, in that Chadbourne allowed it but declined to grant Harrington a formal right-of-way. In January 2008, Chadbourne notified Harrington that the road would be closed. James Sysko, the co-defendant in this case, owns property adjoining Harrington's, as well as a hydroelectric generator in Stoney Brook (labeled "generator house" on the exhibit) and a co-located cement bridge over the brook sited on land owned by Bruce Powell. He too was unsuccessful in obtaining a formal right-of-way from Chadbourne, and he talked to Harrington about using Harrington's right-of-way over Laux's property to gain access to the Sysko lot. Harrington spoke to Laux two or three times about using the easement, most recently in 2008, but no agreement was reached as to whether the easement allowed Harrington to drive trucks on the woods road as part of his timber harvesting operation, or whether it was a "walking easement" only.

[¶ 6] Following the 2008 meeting with Laux, Harrington contacted an attorney for advice concerning the right of way; the attorney advised him that he could use the road over Laux's property. Harrington testified that he initially travelled on the road a few times, smoothed out a drainage ditch that had been dug across it, and moved aside some cement blocks that were blocking the way. That night he received a call from Sysko; he told Sysko that his attorney had given the go-ahead to use the road. Soon after, Sysko hired a contractor to work on the road by adding gravel, smoothing high spots, removing rocks and stumps, and adding culverts where there had been drainage trenches. Near the end of the roughly four-day project, Laux came to the site and informed Sysko that he had no right to work on the road.

[¶ 7] In October 2008, Laux filed a complaint against Harrington and Sysko in the Superior Court, seeking (1) a declaration that the road easement no longer existed; (2) a permanent injunction barring Harrington and Sysko from using the road; and (3) damages for common law and statutory trespass. Harrington counterclaimed, requesting a declaratory judgment and a permanent injunction in his favor. Laux and Harrington each moved for summary judgment; both motions were denied.

[¶ 8] In November 2010, Harrington filed a "motion to permit access," seeking a court order permitting him to smooth out one area of the woods road and haul timber over it pending trial. The motion was granted and an order issued. Three days later Laux spoke to Bruce Powell, who owns the property between the northeast corner of Laux's property and Sysko's bridge over Stoney Brook that leads to Harrington's property. All parties agree that in order to follow the current path of the woods road, it is necessary to travel on Powell's property for seventy-five feet. Both Laux and Powell testified at trial that Laux did no more than make Powell aware that Harrington intended to begin using the road to haul timber. Three days after that, Powell went to Harrington's house and told him that he did not have permission to cross his property. Powell said that he did so because he wanted to stay out of the dispute between his neighbors.

[¶ 9] The case went to trial March 22–25, 2011, without a jury. On the third day, the court granted Harrington's M.R. Civ. P. 50(d) motion for judgment as a matter of law as to part of Laux's complaint, finding that a 1990 quitclaim deed from Gerald Harrington to Erik Nelson did not

extinguish the easement claimed by Ralph Harrington. The trial then continued on the issue of whether the easement had been abandoned. In June 2011, the court entered its judgment, finding for Harrington on both Laux's complaint and Harrington's counterclaim. The court awarded Harrington nominal damages of $100, declined to award any punitive damages, entered an injunction against Laux, and issued a declaration specifying in detail the nature and location of the easement.

## II. DISCUSSION

### A. The Quitclaim Deed

[¶ 10] Laux's primary contention is that a 1990 quitclaim deed given by Gerald Harrington, Ralph Harrington's father and predecessor-in-title, to Erik Nelson, Laux's predecessor-in-title, extinguished the easement conveyed to Gerald Harrington in 1962. In the part relevant to this appeal, the quitclaim deed provides:

> GERALD HARRINGTON and LINDA J. HARRINGTON, husband and wife, both of Newry, County of Oxford and State of Maine, for consideration paid, release to ERIK R. NELSON and PAMELA NELSON, husband and wife, both of Hanover, County of Oxford and State of Maine, as joint tenants, land in Newry, County of Oxford and State of Maine.
>
> A certain lot or parcel of land situated Northerly of, but not adjacent to Route 2 in the Town of Newry, County of Oxford and State of Maine, being any right, title or interest that I may own in land Southerly of the following described property line:
>
> Beginning at a point in the center of Stoney Brook opposite a pile of stones on the northerly bank of said Stoney Brook, said point of beginning being the easterly corner of land now or formerly of P.H. Chadbourne Co.; thence easter-

ly along the center line of said Stoney Brook, 400 feet, more or less, to land now or formerly of Bruce and Shirley Powell.

> Reference is made to a plan entitled "Plan of Land on Route 2 Hanover/Newry, Maine for Erik Nelson" by Owen Haskell, Inc. and dated Feb. 13, 1989. (3 sheets)

[¶ 11] Laux asserts that the deed unambiguously released to Nelson "any right, title or interest" that Gerald Harrington held in land south of the 400 feet described, including the easement. He correctly notes that our first task is to determine whether the deed is ambiguous concerning a material term, because "[t]he scope of a party's easement rights must be determined from the unambiguous language on the face of the deed. Only if language in a deed is ambiguous may a court consider extrinsic evidence to determine the intent of the parties." *Matteson v. Batchelder*, 2011 ME 134, ¶ 16, 32 A.3d 1059 (quotation marks omitted). Whether the deed involved here contains an ambiguity is a question of law that we review de novo. *Lloyd v. Benson*, 2006 ME 129, ¶ 8, 910 A.2d 1048.

[¶ 12] In examining the quitclaim deed given by Gerald Harrington to Erik Nelson, we have no difficulty concluding that it unambiguously describes *what* is being released—Harrington released "any right, title or interest that I may own" in the land described, which would include any easement. However, upon examining the entire instrument, we agree with the Superior Court in its finding that the deed is ambiguous concerning *where* the land subject to the release is located. *See Friedlander v. Hiram Ricker & Sons, Inc.*, 485 A.2d 965, 972 (Me.1984) (stating that "one looks at the instrument as a whole to ascertain the intention of the parties to the

conveyance ... the cardinal rule for the interpretation of deeds [being] the expressed intention of the parties, gathered from all parts of the instrument" (citation omitted) (quotation marks omitted)).

[¶ 13] The deed contains only two calls in describing the "certain lot or parcel of land" affected, stating that it lies (1) "Northerly of, but not adjacent to Route 2 in the Town of Newry," and (2) south of a 400–foot line running along the centerline of Stoney Brook in the northeast corner of what is now the Laux parcel, depicted on the exhibit as extending from the "pile of stones" to the Powell property line just west of the "generator house." Laux contends that this description includes his entire parcel in Newry, resulting in a release of most of the easement.[2] However, a casual examination of the exhibit shows that although the entire woods road on Laux's land in Newry lies south of Stoney Brook, the great majority of the road does not lie south of the 400–foot line in Stoney Brook specifically described in the deed, but rather southwest of that line. Examining only the plain language used in the deed, it is equally likely, and perhaps more so, that the drafter specified a 400–foot line in the brook, rather than the brook in general, because Gerald Harrington intended to affect only the small, approximately rectangular piece of land extending due south from the line. Otherwise, selecting such a short line in a far corner of the brook as a call makes little sense.

■ [¶ 14] Because the plain language of the deed resolves what is being released but does not resolve where the affected land lies, an ambiguity exists justifying the trial court's consideration of extrinsic evidence. Once that point is reached, as the Superior Court found and Laux conceded at oral argument, for several reasons the extrinsic evidence admitted at trial establishes that the 1990 quitclaim deed was not intended to affect the easement created in 1962.

[¶ 15] First, the quitclaim deed makes no reference to the easement. Although Laux is correct in asserting that a conveyance can extinguish an easement without an explicit statement that it is doing so, *see Great Cove Boat Club v. Bureau of Pub. Lands,* 672 A.2d 91, 94–95 (Me.1996), we have said that with respect to releasing an easement "the requisite intent ... may be demonstrated by unequivocal acts which are decisive and conclusive and indicate a clear intent to extinguish the easement," *id.* at 94. The Superior Court was not required to ignore the logical conclusion that if Gerald Harrington intended to release his easement lying in Newry and Hanover, the deed he gave to Nelson would at a minimum have referenced both of those towns, particularly where the deed originally creating the easement did so.

[¶ 16] Second, the quitclaim deed references a " 'Plan of Land on Route 2 Hanover/Newry, Maine for Erik Nelson' by Owen Haskell, Inc." That plan, which was admitted in evidence at trial, bears this note: "Premises are subject to the following easements ... right of way granted by Ralph Richardson to Gerald Harrington to cross 'my cow pasture' for access to and from the lot conveyed [to Gerald Harrington]." If the deed was intended to release the easement, it would likely say so in light of the explicit reference to a plan stating that the easement still existed.

[¶ 17] Third, and most tellingly, there is direct evidence in the record of Gerald Harrington's intent at the time of the conveyance. The Haskell plan also notes:

---

**2.** The easement runs through two towns, Newry and Hanover. At oral argument Laux conceded that the quitclaim deed only affects land Gerald Harrington owned in Newry.

"Boundary agreements are recommended with Bruce and Shirley Powell to the east and Gerald Harrington to the north due to conflictions between recorded and field information." James Barker, the surveyor on whose work the Haskell plan was based, testified that "the purpose was to establish the boundary line," and that in making the recommendation for a boundary agreement he did not contemplate extinguishing the Harrington right of way.

[¶ 18] In his deposition, considered by the trial court as evidence, Erik Nelson, the grantee of the quitclaim deed, stated that "my understanding is the essence of the [deed] was to ensure [*sic*] the Harringtons that I was honoring their right of way across my property and that ... my installation of the [water] intake structure ... in the Stoney Brook would not in any way hinder his existing right of way across the property." Nelson's affidavit, also considered by the court, states in part:

I clearly recollect discussing with Gerald Harrington my intention to construct an intake structure in the Stoney Brook to divert a water supply for the Chamberlain condominium's fire suppression system.[3]

Gabe Harrington and I discussed Gabe Harrington's concern that construction and installation of such [a] structure might be interpreted to impede an existing right-of-way Mr. Harrington had across my property that he and his family enjoyed to access his property to the north and east of my property.

. . . .

We both agreed that we did not want to take any action that would affect or restrict in any way Gabe Harrington's deeded right of way over my property.

. . . .

My intent and Gabe Harrington's intent when signing this deed was only to establish a boundary to allow me to construct the water intake. Neither of us had any intent to restrict or extinguish Gabe Harrington's existing easement over my land.

[¶ 19] Given this record, the court was fully justified in finding that "Harrington's quitclaim deed to the Nelsons dated April 6, 1990 ... which the Lauxes assert extinguishes Harrington's easement, was intended to clarify the boundary between the Nelsons (now Lauxes) and Harrington, and was not intended to release Harrington's easement over the land now owned by the Lauxes." *See Flaherty v. Muther,* 2011 ME 32, ¶ 55, 17 A.3d 640 ("The objective intent of the parties is a question of fact, which we review for clear error.").

**B. Whether Harrington Abandoned the Easement**

■ [¶ 20] The Superior Court found that the easement's original southern point of entry from Route 2 is no longer in use because part of the Chamberlain condominium complex, built by Erik Nelson, now sits on it. As it is used now, the easement begins on a portion of Chamberlain Way, a paved road running across land not owned by Laux. Laux contends that because the entry point recognized by the court has changed from its original location, the easement has been abandoned. The court found "no credible evidence that Harrington has abandoned the easement."

■ [¶ 21] A prima facie showing of abandonment requires the party asserting it to establish

(1) a history of nonuse coupled with an act or omission evincing a clear intent to

---

**3.** The Chamberlain was a condominium complex Nelson was developing, depicted at the south end of the exhibit attached to the judgment.

abandon, or (2) adverse possession by the servient estate. The elements necessary to establish adverse possession by the servient estate are the same as those that must be proven when an adverse possessor attempts to deprive the true owner of a fee interest.

*D'Angelo v. McNutt,* 2005 ME 31, ¶ 13, 868 A.2d 239 (emphasis removed) (quotation marks omitted).

[¶ 22] Regarding the first alternative of the test for abandonment, there is no evidence that Gerald Harrington did anything evincing a clear intent to abandon the easement when the Chamberlain condominium complex was built. To the contrary, Erik Nelson said that he and Harrington specifically discussed preserving the easement when Harrington gave Nelson the quitclaim deed in 1990. Neither Harrington nor Nelson thought that construction of the condominiums terminated the easement. Furthermore, Laux testified at the trial that in 1993 when he bought Nelson's land, Harrington had not lost his easement through lack of use.

[¶ 23] Concerning the second alternative, Laux does not contend that he has acquired the easement by adverse possession, nor could he, given his admission that Harrington had not lost the easement through disuse as of 1993. *See Flaherty,* 2011 ME 32, ¶ 80, 17 A.3d 640 (noting statutory requirement that adverse possession be maintained "uninterruptedly for 20 years").

## C. Location of the Easement

[¶ 24] We also find no merit in Laux's arguments that the location of the easement as declared by the trial court is invalid because the court infringed on the property rights of non-parties to this action,[4] and because it improperly altered the course of the easement. Concerning the first of these, the court recognized in its judgment that the easement as it is currently used begins and ends on property that Laux does not own, in that the southern segment utilizes part of Chamberlain Way, owned by the Chamberlain condominiums, and the northeast segment runs over the seventy-five feet of land owned by Powell. The court's judgment was careful, however, to adjudicate only the property rights of Laux and Harrington.[5]

[¶ 25] At trial, Harrington admitted that the court did not have the authority to declare that the easement ran over land owned by the Chamberlain or Powell as non-parties to the suit, and recognized that he would have to "take his chances" with those neighbors concerning his use of the southern and northeastern ends of the woods road. Although the court's judgment mentions the Chamberlain and Powell properties in its discussion of the current course of the easement, their inclusion is in the nature of a recitation of fact, not a declaration of the easement's location as a matter of law. The court's formal declaration of the location of the easement, separately attached to its judg-

4. Although no party raised the issue, it is not clear that Laux has standing to assert the property rights of non-parties. *See DiVeto v. Kjellgren,* 2004 ME 133, ¶ 24, 861 A.2d 618 (holding that one who does not own a parcel cannot maintain a claim of title by acquiescence or a claim of trespass). Because we conclude that the trial court's judgment did not adjudicate the rights of non-parties, it is not necessary to reach that question.

5. Sysko is a party to this action because he improved and hopes to use the easement with Harrington's permission, and because he was named a defendant by Laux; he does not claim a property interest in Laux's land himself, and conceded at oral argument that he has no right to use the easement.

ment as Exhibit B with the stated intention that the exhibit be filed in the Oxford County Registry of Deeds, makes no mention of the Chamberlain or Powell properties in its description of the servient estate; rather, it declares that the gravel woods road subject to the judgment "starts at a northern point along Chamberlain Way contiguous with the Servient Estate" and ends at "the northeast corner of the Servient Estate Property," a description that pointedly omits the Chamberlain and Powell properties.

[¶ 26] Concerning Laux's second argument, his assertion that the court erred in altering the course of the easement refers, in part, to the fact that historically the woods road ran to the "pile of stones" over a bridge across Stoney Brook that no longer exists. As it is used now, the road runs across Laux's land on the south side of Stoney Brook to the Powell property line. It is this alteration that the court found was created by necessity and therefore declared to be part of the easement.

[¶ 27] In *Matteson v. Batchelder*, the trial court reformed a deed that created an easement to conform to the easement's historical use. 2011 ME 134, ¶ 17, 32 A.3d 1059. We held that the court erred because its reformation disregarded an unambiguous monument referred to in the deed as a boundary. *Id.* Here, the deed from Ralph Richardson creating the easement does not prescribe any particular course for the woods road; it simply establishes "a right of way over and across my Cow Pasture." Nothing in that language prevented the court from declaring that the easement lies where the road now exists.

### D.  Overburdening

[¶ 28] Laux finally contends that if the easement still exists, Harrington and Sysko trespassed on his land by overburdening it. The court found that their use was consistent with the easement's original purpose, and that the repairs and improvements made to the road did not damage Laux.

[¶ 29] We have said that "[a] court's overburdening analysis evaluate[s] whether it is reasonable to conclude that a particular use was within the contemplation of the parties to the conveyance and, in that context, whether the contested use made of the servient estate by the dominant estate exceeds the rights granted to the user." *Flaherty*, 2011 ME 32, ¶ 74, 17 A.3d 640 (quotation marks omitted). "Whether an easement is overburdened is a question of fact." *Id.*

[¶ 30] Here, the evidence supported a finding that the primary use of the Harrington lot has been as a wood lot at least since the 1970s. Sysko testified in detail as to the improvements he made to the road to facilitate that use—adding gravel to the roadbed, leveling high spots, and removing large rocks, stumps, and brush. Laux has not identified any specific damage caused by the road improvements and the court found that there was none. Given this record, the court's finding that the easement was not overburdened is not clearly erroneous. *See id.* ¶ 76 (holding that a trial court's determination that an easement was overburdened was not clearly erroneous).

### E.  Harrington's Counterclaim

[¶ 31] Harrington filed a three-count amended counterclaim, seeking (1) a declaratory judgment; (2) a permanent injunction; and (3) damages for a private nuisance as a result of Laux's interference with his right-of-way. The Superior Court effectively found for Harrington on all counts, issuing a declaratory judgment af-

firming the existence and specifying the location of the easement; prohibiting Laux from interfering with Harrington's use of the easement; and finding that Laux had previously engaged in such interference. Finding that Harrington had suffered only nominal damages, the court awarded him $100 in compensatory damages and declined to award punitive damages.

[¶ 32] In his cross-appeal, Harrington contends that the court erred in excluding evidence at trial concerning conversations Laux had with an attorney about the validity of the easement. He asserts that this evidence would have established that Laux deceived the attorney regarding material facts in order to fraudulently obtain an opinion that allowed him to deny Harrington access to the right-of-way. Harrington argues that if the court had heard the excluded evidence of Laux's maliciousness, it would have awarded him greater damages. He asks us to sever this issue and remand it for a jury trial.

[¶ 33] There are several problems with Harrington's argument. First, in testifying about the monetary loss caused by Laux's refusal to allow him to use the easement, Harrington essentially waived his claim for damages, saying at various points: "All I would be satisfied with is just [to] be able to get in and out of that place [his wood lot]"; "I'm not looking for money"; "It's the loss [of what he considered to be his right]"; and "Forget.... [t]he cost. I'll eat it.... [By the t]ime we get it figured out, it would cost more."

[¶ 34] Second, the court's award of nominal compensatory damages is supported by the evidence. *See Estate of Hoch v. Stifel*, 2011 ME 24, ¶ 43, 16 A.3d 137 ("Our review of compensatory damage awards, the assessment of which is in the sole province of the fact-finder, is highly deferential. We will disturb an award of damages only when it is plain that there is no rational basis upon which the amount of the award may be supported...." (quotation marks omitted)). During Harrington's testimony, the court inquired:

COURT: I understand that your position is that you were improperly prohibited from using this right-of-way. But as far as the actual loss from not being able to take wood off, that didn't happen because ... you were able to use the Chadbourne road?

HARRINGTON: Yes.

The court later observed that Harrington's damages could have been substantial, but ended up being "pretty minimal" because he had alternate access to the wood lot while the dispute over the Laux easement was litigated.

[¶ 35] Third, regarding the claim for punitive damages, we have required a claimant to meet a high standard:

A punitive damage award must be based on tortious conduct and may be awarded only if the tortfeasor acted with malice. Punitive damages are available if the plaintiff can establish by clear and convincing evidence that the defendant's conduct was motivated by actual ill will or was so outrageous that malice is implied. For factual findings that must be proven under the clear and convincing standard, the issue is whether the fact-finder could reasonably have been persuaded that the required factual finding was proved to be *highly probable.* Our review of a trial court's award of punitive damages is limited to deciding whether the findings of fact are clearly erroneous.

*Waxler v. Waxler*, 1997 ME 190, ¶ 15, 699 A.2d 1161 (citations omitted) (quotation marks omitted).

[¶ 36] Harrington asserts that a new trial is required so that he can use

Laux's communications with his attorney to ask a jury to infer that Laux acted with malice. The trial court could already make that assessment, however, because it heard the evidence concerning what Laux had actually done or not done to prevent Harrington from using the easement, and thus had a basis for making findings concerning Laux's intent in deciding not to award punitive damages. For example, the court heard evidence that Laux had physically blocked the woods road, but it declined to find that Laux attempted to interfere with Harrington's use of the road by asking Bruce Powell to deny Harrington access to it. The court's implicit finding that Laux's conduct did not rise to the level of actual ill will or outrageousness required to award punitive damages is not clearly erroneous.

[¶ 37] Had it granted Harrington's request to present evidence of Laux's communications with his attorney, accepting for the purposes of argument Harrington's assertion that the attorney-client privilege had been waived, the court would have faced a potentially lengthy mini-trial concerning the twelve misstatements and omissions allegedly made by Laux that Harrington contended he could prove—a prospect the court had the discretion to avoid pursuant to M.R. Evid. 403 in light of the other evidence available to it. *See State v. Hamel*, 2007 ME 18, ¶ 6, 913 A.2d 1287 (stating that rulings made pursuant to Rule 403 are reviewed for an abuse of discretion).

The entry is:

Judgment affirmed.