MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:      2015 ME 152
Docket:        Han-15-40
Submitted
 On Briefs:  October 21, 2015
Decided:      November 24, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

RICHARD P. FRENCH et al.

v.

ESTATE OF MARTHA GUTZAN et al.

ALEXANDER, J.

[¶1]  The Estate of Martha Gutzan appeals from a declaratory judgment entered by the District Court (Ellsworth, *Mallonee, J.*) following a nonjury trial determining that Richard P. French owns an access easement across property owned by the Estate.  French's chain of title traces back to an 1880 deed reserving the easement in question.  Because the 1880 deed created an easement appurtenant benefitting French's property, and the Estate had notice of the easement, we affirm.

## I.  BACKGROUND

[¶2]  In 1993, French purchased from his father's estate an undeveloped lot with no road access.  French's parents had purchased that property and received a deed in 1944 from a couple named Goodell ("the Goodell deed").  In 1998, French purchased property from the heirs of a family named Grindle by quitclaim deed

2

("the Grindle deed"). French contends that the two deeds convey the same property, but the relationship between the two deeds was never clearly established at trial.

[¶3] The chain of title for the property described in the Grindle deed traces back to an 1867 conveyance between members of the Hutchings family. Prior to that transaction, French's property and the Estate's property were one lot.

[¶4] Through a series of intra-family transactions, that property was divided, shuffled between family members, recombined, and divided again.[1] The key transaction occurred in 1880, when Reuben Hutchings transferred a large part of the then combined property to his brother Edward. From the transferred property, Reuben Hutchings reserved French's lot to himself, along with "the right of way from said lot East of Meadow Brook to the County road in the way as now travelled."

[¶5] In 1884, Reuben Hutchings transferred French's lot to Andrew Grindle "with all the privileges and appurtenances thereunto." By the Grindle deed, Grindle's heirs transferred the lot to French. In two transactions in 1884 and 1885, the Estate's lot was transferred from Reuben Hutchings's brother Edward to an owner whose successors in interest transferred the property to the Estate in 1987.

---

[1] We commend the trial court for its work creating a detailed chart, included in its judgment, tracking this complex series of transactions and transcribing the relevant language of the handwritten deeds.

The Estate's title history and deed contains language subjecting the property to "the right reserved . . . to Reuben H. Hutchings to cross from a lot east of Meadow Brook across the northerly part of this lot to the county road."

[¶6] After the Estate denied French use of the access easement, French brought this action to quiet title.[2] The court held a nonjury trial and, in its judgment, concluded that French, by virtue of the Grindle deed, owns an access easement over the Estate's property. The court's conclusion was based on its factual findings that the right of way easement reserved by Reuben Hutchings in the 1880 transaction and transferred to Grindle in 1884, was transferred to French by the Grindle deed, and that, using the language quoted above, the original grantor, Reuben Hutchings, intended to reserve an appurtenant easement.

## II. DISCUSSION

[¶7] We review the trial court's factual findings for clear error. *Weinstein v. Hurlbert*, 2012 ME 84, ¶ 9, 45 A.3d 743. "The construction of language creating an easement is a question of law, which we review *de novo*." *Stickney v. City of Saco*, 2001 ME 69, ¶ 53, 770 A.2d 592. When the deed creating an easement is ambiguous—for example, when the scope or precise location of the easement is not clear from the face of the deed—the court looks to the intent of the parties.

---

2 French brought a number of other claims, and the Estate brought a number of counterclaims. The trial court's judgment as to these claims is not at issue on appeal.

4

*Anchors v. Manter*, 1998 ME 152, ¶ 16, 714 A.2d 134. A trial court's determination as to the parties' intent is a question of fact, which we review for clear error. *Id.*

A. Construction of the Deed

[¶8] The Estate argues that the easement created in 1880 was an easement in gross for the personal benefit of Reuben Hutchings and did not, therefore, pass with the land to French. This is contrary to Maine's strong preference in favor of construing easements to be appurtenant, rather than in gross, *see Stickney*, 2001 ME 69, ¶ 33, 770 A.2d 592, and contrary to the intent of the parties to the 1880 transaction as found by the District Court and supported by the circumstances surrounding the transaction.

[¶9] An easement may be either appurtenant to a dominant estate or in gross for the benefit of a particular individual or individuals. *Stickney*, 2001 ME 69, ¶¶ 31-32, 770 A.2d 592. An easement appurtenant runs with the dominant estate, *id.* ¶ 31, while an easement in gross terminates, at the latest, with the death of the benefited individual, *id.* ¶ 32.

[¶10] Maine has recognized a strong preference for construing easements as appurtenant rather than in gross. *Id.* ¶ 33 ("The traditional rules of construction for grants or reservations of easements required that, whenever possible, an easement be fairly construed to be appurtenant to the land of the person for whose use the

easement is created."). Under the common law, "to give effect to the intention of the parties this court . . . routinely construed a provision in a deed purporting to reserve an easement for the benefit of land retained by the grantor as the creation of an easement appurtenant." *O'Neill v. Williams*, 527 A.2d 322, 324 (Me. 1987).

[¶11] The interpretation of this deed is supported by reference to the Short Form Deeds Act, *see* 33 M.R.S. § 772 (2014); *Tarason v. Wesson Realty, LLC*, 2012 ME 47, ¶ 16, 40 A.3d 1005, which requires that an easement be construed as appurtenant "unless a different intention is clearly expressed in the instrument . . . by an explicit restriction of the interest to the use and benefit only of the person or persons to whom it is conveyed or reserved," 33 M.R.S. § 772(1) (2014); *see also Tarason*, 2012 ME 47, ¶ 18, 40 A.3d 1005.

[¶12] The 1880 deed between Reuben and Edward Hutchings states that Reuben reserves "the right of way from said lot East of Meadow Brook to the County road in the way as now travelled." The Estate argues that the use of the definite article "the" in referring to the reserved easement, rather than the indefinite article "a," is a reference to an earlier easement conveyed to Reuben Hutchings by his father in 1867 and that the 1880 deed should be read to convey an identical easement.[3]

---

[3] Contrary to the Estate's assertion, the trial court did not conclude that the 1880 transaction "changed the easement from in gross to appurtenant." The easement created in 1867 was extinguished when Reuben Hutchings later acquired fee simple ownership of both the dominant and servient estates.

6

[¶13] The 1867 conveyance arguably created an easement in gross because it specifically granted the right to Reuben Hutchings, who at that time held only a life estate in the benefited parcel with the remainder held by the owner of the servient estate. *Cf. LeMay v. Anderson*, 397 A.2d 984, 986-87 (Me. 1979).

[¶14] Prior to the 1880 transaction, however, Reuben Hutchings had become the fee simple owner of the property that was benefited by the easement created in the 1880 transaction. Given this fact, and in the absence of an explicit indication that the right was intended to be in gross, the stronger interpretation is that the word "the" was used to define the location of the easement, rather than its character as appurtenant or in gross.[4] Therefore, the court did not clearly err in finding that Reuben Hutchings intended the easement to be appurtenant to his landlocked parcel, thereby maintaining a means of access for future owners of the property. *See O'Neill*, 527 A.2d at 324 ("It is highly unlikely that [the] grantor would knowingly have impaired the value of the property he retained by limiting the easement to a life interest.").

[¶15] Given the strong preference for easements appurtenant and the facts surrounding Reuben Hutchings's transfer of the property, the record supports the

*See LeMay v. Anderson*, 397 A.2d 984, 988 n.3 (Me. 1979). The trial court correctly concluded that the 1880 transaction created a new easement.

[4] The original grant from the father to Reuben Hutchings uses the definitive article as well, suggesting that this family simply used the phrase "the right of way" to indicate a person's right to cross another's property for the purpose of obtaining access to property.

trial court's finding that the 1880 conveyance created an easement appurtenant, the benefit of which passed with the land to French. *See LeMay*, 397 A.2d at 989. The benefit of an easement appurtenant passes automatically with the transfer of the dominant estate. *Id.* The burden of an easement appurtenant passes so long as the holder of the servient estate has "actual, constructive or implied notice of the servitude." *Id.* Explicit reference to "the right granted to Reuben H. Hutchings" in the deed conveying the Estate's lot to the Estate provides constructive notice and, therefore, the burden of the easement ran to the Estate. *See id.*

B.    French's Ownership of the Dominant Estate

[¶16]    The Estate further argues that even if the 1880 deed created an easement appurtenant, French failed to carry his burden to prove that his lot is benefited by the easement. French bore the burden to prove by a preponderance of the evidence that an easement was created and that he now owns the property benefitted by the easement. *See LaBelle v. Blake*, 1998 ME 165, ¶ 9 n.3, 714 A.2d 145; *Hodgdon v. Campbell*, 411 A.2d 667, 670 (Me. 1980). As explained above, the deeds and chains of title were sufficient to prove the creation and ongoing existence of the easement. Proof of ownership required French to prove that he owns the dominant estate—the property reserved by Reuben Hutchings.

[¶17]  French did not provide concrete evidence of the relationship between the Goodell deed and the Grindle deed or precisely where the property described in each of those deeds is located.  Although it would have been preferable for French to provide a survey or other evidence to clarify why two deeds and chains of title exist and where exactly the property each deed describes is located, it was sufficient that French proved he owned the property conveyed by the Grindle deed. Because it is clear from the Grindle deed and the Estate's deed, taken together along with their respective chains of title, that French owns the dominant estate benefitted by an easement across the Estate's property, French carried his burden of proof.

[¶18]  The Estate argues that French was required to prove precisely where on the face of the earth the easement is located.  There is no support for this statement in Maine law.  The Estate points to *Stickney*, which holds that it was not error for a trial court to rely on survey evidence in determining the location of an easement.  2001 ME 69, ¶ 24, 770 A.2d 592.  *Stickney*, however, does not hold that proving the precise location of an easement is required for a plaintiff to receive a judgment declaring that an easement exists and that the plaintiff owns the easement. *See id.*

[¶19]  Proof of the precise location of the easement might be necessary if there was a question as to whether the easement crosses the Estate's property or

some other property. Here, that is not the issue. The parties dispute whether an access easement exists, but there is no dispute that, to the extent an easement exists, it runs over the Estate's property. French was not, therefore, required to prove the precise location of the easement for the court to declare that the easement exists, that it runs over the Estate's property, and that French owns it.

[¶20] Because the deed at issue is most reasonably interpreted to create an easement appurtenant to property French now owns, and the Estate had notice of the easement, the trial court did not err in concluding that French owns an access easement across the Estate's property.

The entry is:

Judgment affirmed.

**On the briefs:**

Donald Brown, Esq., Brewer, for appellant Estate of Martha Gutzan

Valerie Chiasson, Esq., Ellsworth, for appellees Richard P. French and Santos French