MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2016 ME 55
Docket:        Ken-14-545
Submitted
 On Briefs:    October 21, 2015
Decided:       April 12, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

CHARLES D. WARDWELL

v.

JOHN R. DUGGINS et al.

HJELM, J.

[¶1]   Charles D. Wardwell owns land that is burdened by an easement benefiting an abutting parcel owned by John R. Duggins and Corie L. Duggins. Disputes arose regarding the permissible uses of the easement, resulting in this action.  After a nonjury trial, the Superior Court (Kennebec County, *Murphy, J.*) issued a judgment declaring in part that the scope of the easement includes hunting and recreational activity.  Wardwell appeals from that aspect of the judgment, arguing that the parties to the grant did not intend those uses for the easement. We affirm the judgment.[1]

---

[1]  Before Wardwell filed a notice of appeal, several of the Dugginses' trial exhibits were improvidently returned to them.  Pursuant to a procedural order that we issued, the parties filed originals or copies of those trial exhibits and were given an opportunity to be heard on those filings.  As a result of that process, we now consider the trial record to be complete and accurate.

## I. BACKGROUND

[¶2]   The court made the following findings of fact based on competent evidence in the record following a nonjury trial.  *See French v. Estate of Gutzan*, 2015 ME 152, ¶ 7, 128 A.3d 657.  The Dugginses own land in Litchfield that is benefited by an easement running across Wardwell's abutting lot.  The easement, which provides access from the Dugginses' land to a public way, was created in a 1954 deed from Clarence Linton to Harry J. Wille and Marie Wille.  In that transaction, Linton conveyed a portion of his land to the Willes.  He retained the remaining land, which is now owned by the Dugginses.  Wardwell now owns a portion of the parcel that Linton conveyed to the Willes.

[¶3]  The 1954 deed creating the easement describes it as follows:

Excepting and reserving for the said Grantor [Linton], his heirs or assigns, a right of way by foot or vehicle over the Southerly end of the [premises granted to the Willes] as now laid out and used, from said Hallowell Road to other land owned by the said Grantor on the Easterly side of the [premises granted to the Willes].

[¶4]   In 1962, Linton conveyed the dominant estate and the appurtenant easement to a logging company.   After some subsequent conveyances, the Dugginses acquired the dominant estate in a 2006 warranty deed, which includes a description of the easement as a "right of way by foot or vehicle as reserved in said Wille's deed over and across the southerly end of Wille's property as the same is now established."  Wardwell acquired the servient estate in a 2007 warranty deed

from his brother, Richard K. Wardwell Jr., where the easement is similarly described as "a right of way by foot or vehicle over the southerly end of the [premises granted to Wardwell] as now laid out and used."

[¶5]  Since its creation in 1954, the easement has been used periodically by various owners of the dominant estate, including the Dugginses, for harvesting and transporting timber.  Some time after Wardwell acquired the servient estate, the Dugginses improved the right-of-way by applying gravel and installing a culvert, precipitating the present conflict.  In March 2013, Wardwell filed a complaint requesting that the court declare that the Dugginses' activities exceeded the scope of the easement.  With their answer, the Dugginses filed a counterclaim for a declaratory judgment that their use of the easement is consistent with their deeded rights.[2]

[¶6]  At a trial held in February 2014, a number of witnesses testified about the historical uses of the easement.  In particular, Wardwell's father, Richard K. Wardwell Sr., testified that he lived in Litchfield from 1955 to 1968 and that

---

  [2]  Both parties also alleged a number of other causes of action.  Wardwell alleged trespass and injury to land, and he sought issuance of an injunction and an award of damages.  The Dugginses alleged injury to land, nuisance, and unjust enrichment, and they sought injunctive relief and money damages.  In its judgment, the court adjudicated the parties' claims for injunctive and declaratory relief by defining the scope of the easement and ordering the Dugginses to repair areas of Wardwell's property damaged by their use of the right-of-way.  The court also awarded Wardwell, on his trespass claim, nominal damages in the amount of one dollar.  The court dismissed the parties' remaining claims with prejudice.  The Dugginses did not appeal, and Wardwell challenges only the court's declaration of the scope of the easement.

4

beginning in 1962, when Linton conveyed the dominant estate to a logging company, the right-of-way was used by some of the succeeding property owners for transporting timber. Corie Duggins, who lived in Litchfield from 1964 until 1978 on property located near the land she now owns with John Duggins, testified that when she was a child she and her father used the right-of-way approximately every week to go fishing, hunting, and trapping. In addition, Wardwell introduced in evidence a transcript of John Duggins's deposition where he stated that he believed his use of the easement was unrestricted and that he intended to use the easement for, among other things, hunting, fishing, trapping, and riding all-terrain vehicles.

[¶7] Following the trial, the court took a view of the disputed easement and then, in August 2014, issued written findings of fact and conclusions of law. The court found that the language creating the easement was unambiguous and encompassed the right to transport timber. The court further found that the Dugginses have the right to make improvements to the right-of-way consistent with that use. After the court issued its findings, the parties submitted proposed judgments, and the court issued a final judgment in October 2014. The judgment declared that the Dugginses have a "right to use the existing right-of-way . . . for ingress and egress, by foot and vehicle, to and from their land . . . for logging, hunting and recreation."

[¶8]  Wardwell timely moved, pursuant to M.R. Civ. P. 59(e), to amend the judgment by excluding the terms "hunting and recreation" from the declaration of the scope of the easement.  After the Dugginses filed an opposition, the court denied the motion, stating, "The use of the right of way for hunting and recreation is consistent with the traditional use of the easement, and is consistent with trial evidence.  [The] court finds that such use would not overburden this easement." Wardwell timely appealed.  *See* 14 M.R.S. § 1851 (2015); M.R. App. P. 2.

## II.  DISCUSSION

[¶9]  Wardwell argues that the trial court abused its discretion by denying his motion to amend the judgment so that it would exclude hunting and recreation from the scope of the easement.  He asserts that the record is devoid of evidence that the parties to the original conveyance contemplated that the easement would be used by the owners of the dominant estate for hunting and recreation, and that the court did not make any findings to support the inclusion of those uses in the final judgment.[3]  We review the denial of a Rule 59 motion for an abuse of discretion.  *Wells Fargo Bank, N.A. v. Burek*, 2013 ME 87, ¶ 14, 81 A.3d 330.

---

[3]  Wardwell also argues that the inclusion of hunting and recreation in the declaration of the scope of the easement will lead to an overburdening of the easement.  Cases that address overburdening focus on whether a particular use was contemplated by the parties to the original grant.  *See Laux v. Harrington*, 2012 ME 18, ¶¶ 28-30, 38 A.3d 318.  Because Wardwell raises an overburdening argument only to argue that the easement was not intended for hunting and recreation, we do not discuss overburdening as a discrete issue.

[¶10] "The scope of a party's easement rights must be determined from the unambiguous language on the face of the deed." *Laux v. Harrington*, 2012 ME 18, ¶ 11, 38 A.3d 318 (alteration omitted) (quotation marks omitted). If the permitted uses of an easement are not evident from the face of the deed, a court may consider extrinsic evidence to determine the intent of the parties to the original conveyance. *Anchors v. Manter*, 1998 ME 152, ¶ 16, 714 A.2d 134; *Fine Line, Inc. v. Blake*, 677 A.2d 1061, 1063-64 (Me. 1996). Whether the language in a deed is ambiguous is a question of law that we review de novo. *Laux*, 2012 ME 18, ¶ 11, 38 A.3d 318. A court's determination of the parties' objective intent, as ascertained from extrinsic evidence, is a question of fact, which we review for clear error. *Anchors*, 1998 ME 152, ¶ 16, 714 A.2d 134.

[¶11] As the trial court correctly concluded, the language in the 1954 deed establishing the *existence* of the easement over the land now owned by Wardwell is unambiguous. The *purpose and scope* of that easement, however, cannot be ascertained from the face of the deed because the deed merely states that the right-of-way was to be "as now laid out and used." It is therefore necessary to consider extrinsic evidence to identify the uses of the easement at the time of the grant. *See Flaherty v. Muther*, 2011 ME 32, ¶ 56, 17 A.3d 640; *Badger v. Hill*, 404 A.2d 222, 225 (Me. 1979).

[¶12]   In determining the scope of an easement, the question is whether a particular use would have been within the contemplation of the parties to the original conveyance.  *See Guild v. Hinman*, 1997 ME 120, ¶¶ 7-8, 695 A.2d 1190. In other words, the question is whether a use was "reasonably foreseeable" at the time of the grant.  *Pettee v. Young*, 2001 ME 156, ¶ 15, 783 A.2d 637.  A court's determination of whether a particular use was "reasonably foreseeable" may be based on extrinsic evidence, including "circumstances in existence recently prior to the execution of the conveyance, as well as use of the easement and acts acquiesced to during the years shortly after the original grant."  *Sleeper v. Loring*, 2013 ME 112, ¶ 20, 83 A.3d 769 (quotation marks omitted).  Here, to determine whether the court's construction of the deed is supported by the evidence, we consider the facts as found expressly by the court, and because none of the parties moved for the court to issue additional findings, we also will infer that the court found any additional facts necessary to support its determination.  *See* M.R. Civ. P. 52(b); *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶ 13, 804 A.2d 364.

[¶13]  The 1954 deed from Linton to the Willes describes the easement as "a right of way by foot or vehicle . . . as now laid out and used."  The trial court construed this language to allow for access to the dominant estate "for logging, hunting and recreation."  Wardwell acknowledged below, as he does on appeal,

that the easement was traditionally used for logging activities. He asserts, however, the evidence does not support the conclusion that hunting and recreation were additional uses contemplated by the parties to the original conveyance.

[¶14] The record does not contain direct evidence that at or prior to the time of the conveyance, the easement was used for hunting and recreation by the owner of the dominant estate. There is evidence, however, that in subsequent years, the easement was used for those activities by members of the public. In particular, Corie Duggins testified that when she was growing up in Litchfield in the 1960s and 1970s, she and her father would use the right-of-way "probably weekly" to go fishing, hunting, and trapping. Additionally, a contractor hired by the Dugginses testified that as a child in the 1980s, he was aware of the right-of-way, and that he and his friends would "go down there all the time just to . . . go for walks." Finally, Wardwell himself testified that in 2012 he discovered John Duggins and the contractor driving or walking down the right-of-way to go hunting. Although this encounter resulted in a conflict about a bulldozer parked on the right-of-way, in his testimony, Wardwell did not mention any dispute as to John Duggins's use of the right-of-way for hunting.

[¶15] This evidence supports the finding that the right-of-way has been routinely used for outdoor activities including hunting and recreation. Although the direct evidence of these activities describes the *public's* use of the easement

after it was created in 1954, the evidence also could support a finding that the *owners of the property* had used the easement for those purposes before the period addressed by that evidence.[4] In other words, based on evidence that members of the public used the easement for hunting and recreation, the court could have concluded that the actual owner of the dominant estate also would put the easement to similar uses. From this, the court could have reasonably inferred that the parties to the 1954 conveyance would have contemplated that Linton and his successors-in-interest would exercise their rights under the deeded private easement for hunting and recreation.

[¶16] We also note that in Maine, logging roads are often used for hunting and recreation. *Cf. S.D. Warren Co. v. Vernon*, 1997 ME 161, ¶¶ 2, 15, 697 A.2d 1280 (noting, in a case involving an alleged public prescriptive easement, that a road traditionally used for wood hauling was also used by hunters to access surrounding land). When combined with evidence that the easement was actually used for hunting and recreation, this recognition provides additional support for the court's express finding that "hunting and recreation is consistent with the

---

[4] Although we conclude that the court's express and inferred findings are supported, in part, by evidence of public use of the easement for outdoor activities, we are careful to note that this case involves a private express easement benefiting Clarence Linton and his successors-in-interest, and not an easement benefiting the public generally. *Compare Edwards v. Blackman*, 2015 ME 165, ¶ 34, 129 A.3d 971 (explaining that "[a]n easement is created by express grant in a deed when the deed's explicit language evidences the grantor's intent to create an easement for the benefit of the grantee"), *with Brown v. Warchalowski*, 471 A.2d 1026, 1029 (Me. 1984) (explaining that public easement rights "belong to the public and not to any private individual").

traditional use of the easement," and for its inferred finding that because the parties to the conveyance created the easement for the purpose of hauling wood, they could have reasonably foreseen that the owner of the dominant estate would use the easement for hunting and recreation.

[¶17] We therefore conclude that the court did not err by finding that hunting and recreation were uses contemplated by the parties to the original conveyance. Further, the court did not abuse its discretion by denying Wardwell's motion to amend the judgment to exclude those uses from the scope of the easement.

The entry is:

> Judgment affirmed.

---

**On the briefs:**

> Andrew T. Dawson, Esq., and Joseph M. O'Donnell, Esq., Goodspeed & O'Donnell, Augusta, for appellant Charles D. Wardwell
>
> John R. Duggins & Corie L. Duggins did not file a brief

Kennebec County Superior Court docket number RE-2013-20
FOR CLERK REFERENCE ONLY