STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.

STATE OF MAINE
Cumberland, ss, Clerk's Office

SEP 2 7 2017
1:43 p.m.
RECEIVED

ERIK WEST, KATHLEEN WEST,      )
JOHN PRIDE, and JOANN PRIDE,   )
                               )
        Plaintiffs,            )
                               )
        v.                     )        Docket No. PORSC-RE-15-247
                               )
JEWETT & NOONAN                )
TRANSPORTATION, INC.,          )
                               )
        Defendant.            )

## ORDER ON DEFENDANT'S POST-JUDGMENT MOTIONS

Defendant Jewett & Noonan Transportation, Inc. has filed a Renewal of Motion for Judgment as a Matter of Law After Trial Pursuant to Rule 50(b) and also a Motion for New Trial Pursuant to Rule 59(a), or for Remittitur or to Amend/Alter Judgment. Both motions are opposed by Plaintiffs, and the Defendant has filed a reply memorandum in support of both motions.

The court elects to decide both motions without oral argument. *See* M.R. Civ. P. 7(b)(7). For the reasons set forth below, both motions are denied.

*Motion for Judgment as a Matter of Law*

Defendant's renewed Motion for Judgment as a Matter of Law contends that the law required Plaintiffs to present evidence of diminution in the market value of their property for purposes of their nuisance claim and that they failed to do so. Defendant relies on the Law Court decisions in *Johnson v. Maine Energy Recovery Co.,*

1

*Ltd.*, 2010 ME 52, 997 A.2d 741, and *Charlton v. Town of Oxford*, 2001 ME 104, 774 A.2d 366.

This motion presents a question of law initially, and then a mixed question of fact and law.

The pure legal question is whether a nuisance plaintiff must present direct, quantified evidence of diminution in market value, i.e. dollar figures reflecting before and after market values, presumably through an expert appraiser or other expert, to prove the substantial interference element of a common law nuisance claim. This court answers that question in the negative—meaning that in appropriate cases, the jury may infer a diminution in market value caused by a nuisance, when the plaintiff presents evidence, as the Plaintiffs did in this case, that the nuisance prevents potential development of a property.

The mixed question is whether the evidence in this case was sufficient to enable the jury to find that the spilled oil substantially interfered with Plaintiffs' use and enjoyment of their property, causing a diminution in the value of the property. The court's answer is that the evidence was sufficient.

In this case, Plaintiffs sought damages measured by the cost of remediation of the nuisance rather than damages measured by the diminution in value of their property. They did not present any expert appraisal evidence quantifying the market value of their property before and after the oil spill. However, they did present evidence that the continued presence of spilled oil on their property was

preventing them from pursuing their plan to develop the property into separate residential lots.

This court does not interpret *Charlton* and *Johnston* decision to require expert appraisal evidence of the before and after market value of the affected property to be presented in every case. The *Charlton* decision adopts the Prosser treatise's formulation of the elements of common law nuisance, including the element of substantial interference:

> (3) The interference that resulted and the physical harm, if any, from that interference proved to be substantial . . . *The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct;*

*Charlton v. Town of Oxford*, 2001 ME 104 at ¶ 36, 774 A.2d at 377, *quoting* W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 87 at 622-23 (5th ed. 1984).

In other words, a nuisance plaintiff can satisfy the requirement that the nuisance be shown to have reduced the value of the property by proving substantial interference with the plaintiff's use and enjoyment (and development) of the property affected. In a footnote, the court quoted the same treatise to explain further:

> "[W]hen defendant's conduct involves mere physical discomfort or mental annoyance, there is somewhat more difficulty in deciding when the interference is substantial and unreasonable justifying a recovery for damages. Probably a good working rule would be that the annoyance cannot amount to unreasonable interference until it results in a depreciation in the market or rental value of the land."

*Charlton v. Town of Oxford*, 2001 ME 104 at ¶ 36 n.10, 774 A.2d at 377 n.10, *quoting* W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 88 at 626 (5th ed. 1984).

3

Maine law as reflected in *Charlton* and *Johnston* does require a nuisance plaintiff to prove substantial interference causing some diminution in value of the affected property, but does not require such proof always to be in the form of expert appraisal evidence quantifying, in dollar amounts, the before and after market value of the property.

That conclusion is also compelled by logic. The law plainly allows a nuisance plaintiff to elect between two measures of damages—cost of remediation versus diminution in value. Thus, it logically cannot be the law that one of the two—the diminution of value measure—must be proved in every case. When a nuisance plaintiff elects the cost of remediation measure of damages, as Plaintiffs did in this case, expert evidence quantifying the diminution in value caused by a nuisance is not an absolute, categorical requirement.

In the court's view, Plaintiffs' evidence that the continued presence of spilled oil prevented them from developing their property into residential lots for sale was sufficient to enable the jury to find that the Defendant's spilled oil had caused a diminution in value of the Plaintiffs' property for purposes of the substantial interference element of nuisance.

Accordingly, Defendant's Renewal of Motion For Judgment As A Matter Of Law is denied.

*Motion for New Trial Pursuant to Rule 59(a), or for Remittitur or to Amend/Alter Judgment*

4

Defendant's other motion contends, essentially, that the jury's damage award of $490,000 was so disproportionate to the loss sustained by Plaintiffs as to require a new trial, or in the alternative, a remittitur.

This motion requires the court to evaluate the evidence in a light most favorable to the verdict. *See Gammon v. Verrill*, 651 A.2d 831, 833 (Me. 1994). Viewed in that light, the evidence presented at trial can fairly be summarized as follows:

- Plaintiffs bought the property in 2011 for about $200,000. In addition to using the property as their residence, they planned to divide it into residential lots on which they could build and market homes

- The June 2014 oil spill was confined to about a half-acre of the 12-acre property, but the continued presence of spilled oil has prevented the Plaintiffs from proceeding with their plans to develop the property into marketable residential house lots.

- To remove the spilled oil that remained on Plaintiffs' property after the Defendant had completed its remediation will cost $490,000

Defendant's motion argues that because the spilled oil reached only a half-acre, or one twenty-fourth of the Plaintiffs' property, Plaintiffs' loss should be measured at $8,333, or one twenty-fourth of their $200,000 purchase price. The Defendant's argument rests on three factual premises, none of which is necessarily correct or accurate.

5

First, the argument assumes that only a half-acre of Defendant's property was affected. It is true that the spilled oil reached a half-acre on the surface, but the Plaintiffs' geotechnical expert witness, John Sevee, testified in detail about how water contaminated with oil can migrate underground and could contaminate the entire property.

Second, the argument assumes that Plaintiffs proved substantial interference with only a half-acre of their property. However, their evidence, which the jury could have credited, was that the continued presence of spilled oil had interfered with their plans to develop most of the property into residential building lots using wells.

Third, the argument assumes that Plaintiffs' property was worth only what they had paid for it in 2011 and that the development potential for the property had no favorable effect on the property's value.

The jury was instructed that damages awarded could not be disproportionate to the diminution in value of the Plaintiffs' property resulting from the oil spill. The jury could well have decided that the potential return on investment to Plaintiffs from developing the property would make it worth spending $490,000 to clean up the spilled oil that the Defendant chose not to remove. The potential return from development was admittedly not quantified, but that does not mean it could not be considered.

The evidence is sufficient to support the verdict. Defendant's Motion for New Trial Pursuant to Rule 59(a), or for Remittitur or to Amend/Alter Judgment is also denied.

6

It is hereby ORDERED AS FOLLOWS: Defendant Jewett & Noonan Transportation, Inc.'s Renewal of Motion for Judgment as a Matter of Law After Trial Pursuant to Rule 50(b) and Defendant's Motion for New Trial Pursuant to Rule 59(a), or for Remittitur or to Amend/Alter Judgment are both denied.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this Order by reference in the docket.

Dated 27 September 2017

A. M. Horton, Justice

STATE OF MAINE                                SUPERIOR COURT

Cumberland, ss.

ERIK WEST, KATHLEEN WEST,          )
JOHN PRIDE, and JOANN PRIDE,       )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )        Docket No. PORSC-RE-15-247
                                   )
JEWETT & NOONAN                    )
TRANSPORTATION, INC.,              )
                                   )
          Defendant.               )

STATE OF MAINE
Cumberland, ss. Clerk's Office

JUL 12 2017
8:30 a.m.
RECEIVED

## ORDER ON DEFENDANT'S SECOND MOTION
## FOR SUMMARY JUDGMENT

Defendant Jewett & Noonan Transportation, Inc.'s Second Motion for Summary Judgment is before the court, together with Plaintiffs' opposition and Defendant's reply. The court elects to decide the Second Motion without oral argument. *See* M.R. Civ. P. 7(b)(7).[1]

The Second Motion seeks summary judgment on the Plaintiffs' claims for nuisance and common law strict liability, and on Plaintiff's request for punitive damages.

The underlying facts as well as the standard of review on summary judgment have been addressed in the court's prior summary judgment order. However, the Plaintiffs have submitted evidence that reasonable factfinder could decide was sufficient to show that persons or entities acting as agents of the Defendant deliberately misled

---

[1] Oral argument had been scheduled for July 3, 2017, but the courts were closed that day as a result of the brief government shutdown. This case is scheduled for jury trial commencing August 7, 2017, with jury selection July 24, and trying to reschedule oral argument beforehand would be difficult.

1

the Plaintiffs and the Maine Department of Environmental Protection about their intentions to clean up the oil spill on Plaintiffs' property, pretending to engage in cleanup activity, to save the cost of a full cleanup.

1. *Nuisance:* Defendant's Second Motion contends that it is entitled to summary judgment on Plaintiff's common law nuisance claim because Plaintiffs have conceded that Defendant did not intentionally cause oil to be spilled onto Plaintiff's property. Defendant is correct that the Plaintiffs have not made a prima facie showing that Defendant acted intentionally in causing the oil spill.

However, Maine law does not define intent solely in terms how a nuisance began—intentionally continuing a nuisance that may have been created unintentionally can give rise to common law nuisance liability. The Law Court has said that the intent element of the common law nuisance tort requires proof that "the defendant has created *or continued* the condition causing the interference with full knowledge that the harm to the plaintiff's interests are occurring or are substantially certain to follow. " *See Charlton v. Town of Oxford*, 2001 ME 104, ¶ 37 n.11, 774 A.2d 366, 378; *accord, Johnson v. Maine Energy Recovery Co., Ltd. Partnership*, 2010 ME 52, ¶ 15, 997 A.2d 741, 745 (same).

Thus, even if a common nuisance was created unintentionally, the party responsible for creating it can become liable by intentionally continuing it, which is exactly what the Plaintiffs claim the Defendant, acting through agents, did. Plaintiffs have propounded admissible evidence sufficient to persuade a reasonable factfinder that Defendant, through agents, is liable for continuing a substantial interference with

2

Plaintiffs' property. Defendant's Second Motion is denied as to Plaintiffs' common law nuisance claim.

*Strict Liability:* Defendant also seeks summary judgment on Plaintiffs' strict liability claim.

The common law does not impose strict liability except in connection with what the Second Restatement of Torts terms "abnormally dangerous activities." The Second Restatement states the "general principle" as follows:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

RESTATEMENT (SECOND) OF TORTS § 520.

The Maine Law Court has adopted the Second Restatement's six-factor test for determining whether an activity qualifies as "abnormally dangerous" for purposes of imposing strict liability. *See Dyer v. Maine Drilling & Blasting, Inc.*, 2009 ME 126, ¶ 29, 984 A.2d 210, 219, *citing* RESTATEMENT (SECOND) OF TORTS § 520.

Section 520 reads:

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;

3

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

In analyzing whether blasting constitutes an "abnormally dangerous activity," the Law Court in *Dyer* noted that "strict liability is entirely a question of the relation of the activity to its surroundings," 2009 ME 126 at ¶25, 984 A.2d at 218, *quoting* W. Page Keeton, et al., PROSSER & KEETON ON TORTS ch. 13 § 78 at 554 (5th ed. 1984). As an example, blasting in a quarry might not be deemed abnormally dangerous whereas blasting in a residential neighborhood would be. *See* 2009 ME 126 at ¶25, 984 A.2d at 218.

The precise question is whether the transport of fuel oil in a tank truck is an "abnormally dangerous activity" for purposes of imposing common law strict liability. This court answers the question in the negative. For purposes of the six factors, the activity is common and not inappropriate for the roadways where it is carried on, and its value to the community is by no means outweighed by its dangerous attributes. Moreover, it is possible to avoid oil spills from a tanker truck in the exercise of reasonable care. There may be grounds to impose common law strict liability upon other forms of activity involving No. 2 heating oil, but the act of transporting fuel oil in a truck is not inherently or abnormally dangerous.

Plaintiffs point out that the Legislature has enacted a statute that, in substance, imposes a strict liability standard in claims by the State against persons responsible for oil spills:

[A]ny person, vessel, licensee, agent or servant, including a carrier destined for or leaving a licensee's facility while within state waters, who permits or suffers a prohibited discharge or other polluting condition to take place is liable to the State for all disbursements made by it . . . , including damage for injury to, destruction of, loss of, or loss of use of natural resources, the reasonable costs of assessing natural resources damage and the costs of preparing and implementing a natural resources restoration plan. In any suit to enforce claims of the State under this section, to establish liability, it is not necessary for the State to plead or prove negligence in any form or manner on the part of the person causing or suffering the discharge or licensee responsible for the discharge.

38 M.R.S. § 552(2).

On its face, however, the statute does not provide a private right of action against the party responsible for the oil spill. Instead, the statute affords the injured party the right to apply to the Commissioner of the Department of Environmental Protection for compensation from the Maine Ground and Surface Waters Clean-up and Response Fund. *See id.* § 551(2).

The Legislature plainly could have created a private right of action for oil spills based on strict liability, as it has done in the product liability context for unreasonably dangerous products. *See* 14 M.R.S. § 221. The fact that the statute affords a strict liability remedy only to the State does not create a private right of action based on strict liability detracts from Plaintiffs' argument.

Defendant's Second Motion is granted as to Plaintiffs' strict liability claim.

*Punitive Damages*

Defendant's Second Motion also seeks summary judgment on the Plaintiffs' claim for punitive damages. As noted in the court's prior summary judgment order, to recover punitive damages, a plaintiff must demonstrate "by clear and convincing evidence" that the defendant acted with malice. *Laux v. Harrington*, 2012 ME 18, ¶ 35,

5

38 A.3d 318 (citation omitted). To demonstrate malice, a plaintiff must prove either "that the defendant's conduct was motivated by actual ill will," or that the defendant's conduct was "so outrageous that malice is implied." *Id.* (citation omitted).

Here, the Plaintiffs have presented evidence that a reasonable factfinder could accept as sufficient to prove, by clear and convincing evidence, that persons acting on behalf of and as agents of the Defendant deliberately deceived the Plaintiffs into believing that the oil on their property was going to be removed, whereas the true plan, motivated solely by a desire to save costs, was to delay actual removal of the oil until the point that removal would no longer be required by the Maine Department of Environmental Protection. In the court's view, if the Plaintiffs prove a predicate underlying tort—either trespass or nuisance, or both--the allegations of deception, if proven, could support an award of punitive damages.

Defendant's Second Motion is denied as to Plaintiffs' prayer for punitive damages.

IT IS ORDERED: Defendant's Second Motion for Summary Judgment is denied except with respect to the strict liability claim set forth in Count V of Plaintiffs' Complaint.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated July 11, 2017

_____
A.M. Horton
Justice, Superior Court

GAVIN MCCARTHY, ESQ
KATHERINE KAYATTA, ESQ
PIERCE ATWOOD
MERRILLS WHARF
254 COMMERCIAL ST
PORTLAND, ME 04101

STEPHEN ALEXANDER BELL, ESQ
MUNDHENK & BELL LLC
PO BOX 792
PORTLAND, ME 04101-0792

6

STATE OF MAINE
CUMBERLAND, SS

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC- RE-15-247

ERIK WEST, KATHLEEN WEST, )
JOHN PRIDE, and JOANN PRIDE, )
                                )
            Plaintiffs,         )
                                )
    v.                          )
                                )
JEWETT & NOONAN                 )
TRANSPORATION, INC.,            )
                                )
            Defendant           )
                                )

STATE OF MAINE
Cumberland, ss Clerk's Office

MAY 01 2017

RECEIVED

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

There are two motions for summary judgment pending before the court. On or about December 15, 2016, defendant Jewett & Noonan Transportation, Inc. moved for summary judgment on plaintiffs' claims for common law trespass, common law nuisance, and strict liability based upon abnormally dangerous activities. Defendants also argue summary judgment is warranted because plaintiffs are unable to prove their damages under any theory of recovery and have not asserted facts sufficient to present a claim for punitive damages.

Plaintiffs moved for an extension of time to respond arguing that defendant moved for summary judgment before discovery regarding plaintiffs' punitive damages claim concluded. Plaintiffs asserted that the motion was made in defiance of the court's clear statement that such discovery should conclude before any motion for summary judgment was re-filed. On January 9, 2017, the court granted plaintiffs' motion for an extension of time until 21 days after discovery concluded, through the deposition of Paul Nestor, a representative of defendant's insurer.

On or about February 8, 2017, plaintiffs filed their own motion for summary judgment arguing that regardless of how the petroleum products from defendant's overturned tanker truck entered onto plaintiffs' property, defendant is liable for trespass because it has refused to remove them from plaintiffs' property. Plaintiffs also moved for summary judgment arguing that they have established an entitlement to $490,000 in damages based on the cost to remove the petroleum products from the property. Defendant responded to plaintiffs' motion for summary judgment by requesting the court consider its earlier filed motion for summary judgment to be incorporated by reference into its opposition and to decide all of the pending motions at this time.

Following the full briefing of plaintiffs' motion for summary judgment, the court held a conference with the parties to discuss the best method for resolving the pending motions for summary judgment. The parties did not agree on a particular path forward.

Based on the parties' positions at the conference and the current record, it is appropriate to address plaintiffs' motion for summary judgment in its entirety and defendant's motion for summary judgment regarding plaintiffs' common law trespass claim and plaintiffs' proof of damages. The court addresses these issues in defendant's motion for summary judgment because plaintiffs' motion effectively responds to and confronts the arguments raised therein.

For the reasons discussed below, the court denies plaintiffs' motion for summary judgment, and denies those aspects of defendant's motion for summary judgment addressed in this Order, relating to common law trespass and damages.

*Background*

On June 9, 2011, Kathleen West and her parents, John and Joann Pride purchased approximately 12 acres of land located at 15 Washburn Drive in Gorham, Maine (the

2

"property"). (Pl.'s Supp'g S.M.F. ¶ 1.) The Prides and Kathleen West subsequently transferred ownership of the property to Kathleen and Erik West on March 11, 2016. (*Id.* ¶ 2.)

On June 11, 2014, a transport tanker owned and operated by defendant rolled over in a traffic circle near the property, resulting in the release of nearly ten thousand gallons of No. 2 heating petroleum products and kerosene [hereinafter collectively referred to as "petroleum products"]. (*Id.* ¶ 3.) A significant amount of the spilled petroleum products migrated onto the property. (*See id.* ¶ 4.) The driver of defendant's vehicle testified that the spill was occasioned by his attempt to avoid crashing into a vehicle that cut him off. (Bird Dep. 6:1-15). The passenger in defendant's vehicle, however, testified that the driver was gunning the vehicle to get in front of a car that was coming around the traffic circle. (Maraian Dep. 49:1-50:7, 52:6-12.) As a result of the acceleration, according to the passenger, the nose of defendant's vehicle was very close to hitting the vehicle in front of it, and the driver had to jerk the wheel abruptly to avoid a collision, causing the truck to roll over. (*Id.* at 52:13-53:22.)

The Maine Department of Environmental Protection ("DEP") initially requested that the defendant excavate all petroleum-contaminated soils on plaintiffs' property. (Def.'s Supp'g S.M.F. ¶ 5; Compl. ¶ 8.) In light of testing performed in July 2015, showing lowered concentrations of petroleum, the DEP decided not to require any further remediation from defendant. (Def.'s Supp'g S.M.F. ¶ 5; Compl. ¶ 21.)

Robert Dupuis, the designated corporate deponent for defendant, asserts that the reason it never began excavating the site was because it never received an access agreement from the plaintiffs to do so. (Dupuis Dep. 174:19-175:18.) Mr. Dupuis testified that before the DEP concluded no further remediation was required, it had spent over $700,000 remediating the spill. (*Id.* at 101:23-102:3.) The Wests testified that their well was tested about a month after

3

the spill, and then two months thereafter, and both tests found the water was clean. (E West Dep. 69:23-70:10; K West Dep. 72:10-73:11.)

Erik West asserts that he has requested defendant several times to remove all of the petroleum products from the property. (E West Aff. ¶ 5.) Defendant has not removed all of the petroleum products from the property. (Pl.'s Supp'g S.M.F. ¶ 7.) In response to an interrogatory, Kathleen West asserts that it would cost approximately $450,000 to $500,000 to remediate the contaminants on their property. (K West Response to Interrogatory No. 3.) Defendant made a conscious and intentional decision not to excavate the property based at least in part on the fact that the DEP has not required excavation. (Dupuis Dep. 192:10-193:5.)

Plaintiffs' expert witness, John Sevee, P.E., opines that the cost of removing the petroleum products-contaminated soil from the property is approximately $490,000. (Sevee Aff. ¶ 4 and Ex. B thereto; *see also* Garfield Dep. 117-118 ($500,000 estimate for removing the petroleum products-contaminated soil is "probably a little bit more than we had in our remedial alternatives evaluation; but it's not orders of magnitude high or low or that sort of thing").) Mr. Sevee is designated to testify that the spill area still contains contaminants from the spill and that restoration of the area to its pre-spill condition will be very expensive. (Pl.'s Expert Designation.) Mr. Sevee also opined that the level of risk to the groundwater on the property is very high, there will never be a point where there's absolutely no risk of contamination on the property—unless perhaps one were to dig up everything for 500 feet below the ground surface and move it off someplace else and fill it back in with clean soil. (Sevee Dep. 94:12-97:23.) Mr. Sevee believes that such an intensive excavation has never been performed and the reason is that it is cost prohibitive. (*Id.* at 137:10-139:1.)

At the time of the spill, the Wests were in the process of developing the property with the intent that Erik West, an experienced contractor, would build and sell single-family homes.

4

(Pl.'s Supp'g S.M.F. ¶ 10.) Mr. West anticipated being able to build 4 or 5 single family homes and expected the homes to sell for approximately $250,000 each, for total revenues of $1,000,000 or $1,250,000, depending on the number of houses built. (E West Aff. ¶ 8.) Mr. West anticipated that the cost of construction would be approximately $100,000 per home, plus approximately $100,000 for other costs for a total cost of construction of approximately $500,000 to $600,000 depending on the number of houses built. (*Id.* ¶ 9.) Mr. West asserts that by June 11, 2014, he had talked at length with four different persons about their potential interest with the development and all four told him they were prepared to move forward. (*Id.* ¶ 10.) After the spill, however, the individuals he talked to no longer were interested in the property due to the presence of petroleum products. (*Id.* ¶ 11.) Mr. West further asserts that he is aware of no other persons interested in purchasing a house in the development with the current state of contamination. (*Id.* ¶ 12.) Mr. West anticipated revenues, minus the avoided costs of construction, to be approximately $500,000 or $650,000 depending on whether four or five lots could be built on the property. (*Id.* ¶¶ 8-9.)

The Wests testified that they did not know what the property was worth on the day before the accident and do not know the property's value today. (K West Dep. 51:23-52:1, 110:8-13; E West Dep. 54:16-19, 110:18-111:1.)

## I.    *Discussion*

### A. Standard of Review

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely...of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  M.R. Civ. P. 56(c); *see also Levine v.*

5

*R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the fact. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774.

Summary judgment is also appropriate if, looking at the record in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, no reasonable juror could find for the non-moving party. *Id.* ¶ 14, n. 3 (quoting *Scott v. Harris*, 550 U.S. 372, 377 (2007)). This is true "even when concepts such as motive or intent are at issue…if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Dyer. v. Dep't. of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821 (quoting *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007)); *Bouchard*, 661 A.2d at 1144-45 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted"). Accordingly, a "judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation." *Stanton v. Univ. of Maine System*, 2001 ME 96, ¶ 6, 773 A.2d 1045.

Motions for summary judgment must be supported by citations to record evidence of a quality that would be admissible at trial. *Levine*, 2001 ME 77, ¶ 6, 770 A.2d at 656 (citing M.R. Civ. P. 56(e). Facts supported by record citations in a supporting or opposing statement of materials facts are deemed admitted unless properly controverted. M.R. Civ. P. 56(h)(4); *see also Farrell v. Theriault*, 464 A.2d 188, 194 (Me. 1983). When ruling on a motion for summary judgment, courts are only required to consider "the portions of the record referred to, and the material facts set forth, in the parties' statement of material facts to determine whether there is no genuine dispute of material fact." *Lubar v. Connelly*, 2014 ME 17, ¶ 34, 86 A.3d. 642.

B. Whether Plaintiffs Have Asserted Sufficient Facts to Present a Claim for Common Law Trespass

Defendant argues that summary judgment is warranted on plaintiffs' common law trespass claim because the cause of action requires an intent to enter the land of another and it is undisputed that defendant had no such intent. Defendant further argues that they are not liable for a continuing trespass because such a trespass requires the initially tortious placement of a thing on a plaintiff's property and is not available if the initial placement was not tortious. Defendant contends that even if the initial entry was a trespass, it was a permanent, not continuing trespass because the petroleum products are likely to remain indefinitely.

Plaintiffs argue that there are two independent grounds for holding the defendant liable for common law trespass: first, defendant negligently caused the initial entry of petroleum products onto the property, and also because defendant has intentionally failed to remove all of the petroleum products from the property. They assert that when one is asked to leave land or remove one's chattels from the land, a trespass occurs if there is no such removal regardless of how the person or chattel initially entered the land. Stated differently, they contend that just because there was an initial innocent and unintentional entry, it does not mean the defendant cannot be held liable for refusing to subsequently leave the property.

Although both parties point to different provisions of the Restatement (Second) of Torts to support their arguments, the Restatement is clear that it "expresses no opinion as to whether there is a duty to remove from another's land a structure, chattel, or other thing in the possession of the actor which was carried or forced on the land without the actor's fault." RESTATEMENT (SECOND) OF TORTS § 160 caveat (1965). Accordingly, the implications the parties draw from alternate sections of the Restatement are not persuasive.

While the Restatement expresses no opinion, the Law Court shed light on this question in *Hayes v. Bushey*, 160 Me. 14, 196 A.2d 823 (1964). In *Hayes*, the plaintiff brought a complaint

7

for trespass against the defendant after the defendant's truck crashed into plaintiff's building. *Id.* at 15, 196 A.2d at 824. The defendant did not dispute that he drove the truck and damaged plaintiff's building, but argued he had committed no trespass because his entry onto plaintiff's land was not intentional and without fault or negligence on his part. *Id.*, 196 A.2d at 824. The defendant asserted that his entry was caused by the negligence of another driver who negligently struck his truck causing it to enter plaintiff's land. *Id.*, 196 A.2d at 824. The lower court entered summary judgment in favor of the plaintiff determining the defendant was liable for trespass. *Id.* at 15-16, 196 A.2d at 824.

On appeal, the Law Court explained that it "has never before been called upon to decide whether liability will be imposed for an unintended and involuntary intrusion upon land of another." *Id.* at 16, 196 A.2d at 824. In resolving the question in the negative, the Law Court looked to the Restatement (First) of Torts, as well as leading cases from New Hampshire, Massachusetts, and New York. Pertinently, *Hayes* focused on comment e to Section 158 of the Restatement, which provided that "tort liability is never imposed upon one who has neither done an act nor failed to perform a duty." *Id.* at 16, 196 A.2d at 824.

*Hayes* also discussed *Puchlopek v. Portsmouth Power Co.*, 82 N.H. 440, 136 A. 259 (1926), in which the intrusion of the decedent child was not deemed a trespass because the "essential element of force" was lacking when the child slipped and fell by accident, and *Edgarton v. H.P. Welch Co.*, 321 Mass. 603, 74 N.E.2d 674 (1947), where the unintended intrusion upon land in possession of another did not constitute trespass where plaintiff's intestate crashed truck into defendant's property. *Id.* at 17-18, 196 A.2d at 825. Finally, and most importantly for purposes of the present motion, *Hayes* discussed *Phillips v. Sun Oil Co.*, 307 N.Y. 328, 121 N.E.2d 249 (1954), in which a trespass claim based on gasoline leaking from defendants' pumps into a well

on plaintiff's land was dismissed because there was no evidence that the intrusion was negligent or intentional. *Id.* at 18, 196 A.2d at 825.

In *Hayes*, based on its review of these and other authorities, the court concluded that consistent with "the modern trend of the law," no trespass exists where the defendant can demonstrate he was proceeding in the exercise of due care with no intention other than to operate his vehicle upon the public highway, but was forced upon the plaintiff's land by the wrongful act of a third party. *Id.* at 18-19, 196 A.2d at 826. Stated differently, a non-negligent involuntary or accidental entry upon the land of another is not a trespass at common law. On the other hand, a negligent entry can constitute a common law trespass. *See Massachusetts Bay Ins. Co. v. Ferraiolo Construction Co.*, 584 A.2d 608, 611 n.3 (Me. 1990) ("the common-law trespass count of the []suit thus could be based on mistake, inadvertence, or negligence . . .").

Plaintiffs' argument that *Hayes* does not control because it does not involve property of the defendant that was left on plaintiff's land following the initial entry carries some force, but ignores the fact that *Hayes* relied on *Phillips v. Sun Oil Co.* in reaching its conclusion. Specifically, *Hayes* approvingly discussed the determination in *Phillips* that gasoline which seeped into the plaintiff's well—and remained on plaintiff's land—did not give rise to a trespass claim because the plaintiff failed to demonstrate that the intrusion onto plaintiff's land was the result of an intended act or negligence. *Hayes*, 160 Me. at 18, 196 A.2d at 824 (discussing *Phillips*, 307 N.Y at 331, 121 N.E.2d at 250-51).

Accordingly, the court rejects plaintiffs' argument that the defendant can be held liable for common law trespass for failing to remove the petroleum products it spilled onto plaintiffs' land in the absence of negligence or intent on the part of defendant. On the other hand, although the continued presence of petroleum products on plaintiffs' property may not constitute a common law trespass in and of itself, there is a genuine issue of material fact as to

9

whether the initial entry of petroleum products onto plaintiffs' property was caused by defendant's negligent operation of the tanker truck. (*Compare* Bird Dep. 6:1-15, *with* Maraian Dep. 49:1-53:22.) Accordingly, the court denies both parties' motions for summary judgment regarding common law trespass.

C. Whether Summary Judgment is Warranted Regarding Plaintiffs' Claim for Non-Punitive Damages

Defendant argues that plaintiffs have failed to assert or form any evidentiary foundation to enable them to prove damages beyond the cost of the excavation initially required, but subsequently rejected by the DEP. Defendant argues that plaintiffs' position appears to be based on their subjective desire to remediate the property even though their expert testified that the property cannot be fully remediated and the DEP determined no further remediation was required. Additionally, defendant argues that plaintiffs have not identified any evidence as to the loss of value of their property, if any, as a result of the spill.

Plaintiffs contend they have presented undisputed evidence that they have been damaged in the amount of $490,000, which is the amount it would cost to restore the property by removing the petroleum products caused by defendant's crash. Plaintiffs argue that even if restoration costs are not a proper measure of damages, it would simply mean that summary judgment in the amount of at least $500,000 should enter as that represents the minimum loss in the absence of restoration. This figured is based on Erik West's testimony that he anticipated making approximately $500,000 to $650,000 from the sales of houses absent the spill.

The two prevalent measures for damage to real or personal property are: 1) the difference in value of the property before and after the actionable injury; and 2) the cost of repairing or restoring the property to its condition before the injury. *See e.g. Leavitt v. Continental Tel. Co.*, 559 A.2d 786, 788 (Me. 1989). The measure that most precisely

10

compensates the plaintiffs for the loss without recourse to speculation and conjecture should be utilized. *Wendward Corp. v. Group Design, Inc.*, 428 A.2d 57, 61-62 (Me. 1981).

In *Leavitt*, the Law Court approved the Restatement's formulation of damages for harm to land from past invasions as follows:

1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

   (a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred....

559 A.2d at 788 (quoting and approving RESTATEMENT (SECOND) OF TORTS § 929. Stated differently, the measure of damages is ordinarily the cost of restoring the land to its original condition, unless the cost is disproportionate to the diminution in the value of the land caused by the trespass in which case damages are measured by the difference between the value of the land before and after the harm. RESTATEMENT (SECOND) OF TORTS § 929 cmt. b. Even when restorative damages are awarded, damages may be available for diminution in value when the restorative measures do not fully compensate the owner for the damages suffered. *Marchesseault v. Jackson*, 611 A.2d 95, 98 (Me. 1992).

Damages that are "uncertain, contingent, or speculative," however, may not be recovered. *Estate of Hoch v. Stifel*, 2011 ME 24, ¶ 43, 16 A.3d 137. Some evidence of the amount of loss sustained must support an award, but damages need not be proved to a mathematical certainty. *Id.* (citing *Foss v. Ingeneri*, 561 A.2d 498, 498-99 (Me. 1989) (holding that plaintiff retains the burden of proving damages by a preponderance of the evidence following entry of default judgment); *Decesere v. Thayer*, 468 A.2d 597, 598 (Me. 1983) ("Damages must be grounded on established positive facts or on evidence from which their existence and amount

11

may be determined to a probability")). The fact finder may also determine damages based upon probable and inferential proof. *Id.* (citation omitted).

Here, plaintiffs have presented sufficient evidence of damages for the cost of remediation to survive summary judgment through the testimony of their expert, John Sevee.[1] While defendant challenges the foundation for Mr. Sevee's opinion that it will cost approximately $490,000 to remove the petroleum products-contaminated soil from the property, when viewed in the light most favorable to plaintiffs, Mr. Sevee has provided an adequate foundation. Specifically, his affidavit explains that he is a professional engineer with more than forty years of experience, including significant experience involving petroleum spills. (Sevee Aff. ¶ 1.) He also explains that his opinion is based on his review of soil sample reports carried out on the property as well as the DEP's well water test. (*Id.* ¶¶ 2-3.) While Mr. Sevee did not attach the referenced reports to his affidavit, he attached a table summarizing the results, as well as a detailed calculation supporting his estimate regarding the cost to remove the petroleum products-contaminated soil. (Sevee Aff. and Ex.s A & B thereto.) For purposes of summary judgment, this is sufficient to create an issue of material fact regarding the cost to restore the property.[2]

On the other hand, plaintiffs have not definitively established that it will cost $490,000 to restore the property. This is because the assessment of damages is within the sole province of the fact-finder and the fact-finder is "not required to believe witnesses, even if the testimony of those witnesses, be they experts or lay witnesses, is not disputed." *Dionne v. LeClerc*, 2006 ME 34, ¶ 15, 896 A.2d 923 (quoting *Irish v. Gimbel*, 2000 ME 2, ¶ 8, 743 A.2d 736).

---

[1] The DEP's determination that no further remediation was required of defendant is not dispositive of

[2] At trial, or in a motion in limine, defendant may, of course, challenge and examine Mr. Sevee about the underlying facts and data supporting his opinion. M.R. Evid. 705.

Finally, the court concludes that plaintiffs have not presented sufficient evidence on the alternative measure of diminution in value of the property to warrant summary judgment. While property owners may state their opinion as to the fair market value of their property including the cause of any change in the value of their property, *see e.g. Garland v. Roy*, 2009 ME 86, ¶ 21, 976 A.2d 940, the only evidence plaintiffs have presented relating to diminution in value of the property is Mr. West's testimony on anticipated revenues following the anticipated construction and sale of houses. (*See* E West Aff. ¶¶ 8-11.[3]) This testimony is more focused on lost profits than on diminution in value, although it may be relevant to the issue of whether the restoration cost that Mr. Sevee has presented is in proportion to the value of the property.

Moreover, the lost profits analysis that Mr. West presents may require expert testimony. *See State v. Fernald*, 397 A.2d 194, 197 (Me. 1979) ("Under M.R. Evid. 702 it is for the presiding Justice to make an initial determination whether the subject-matter as to which purported expert testimony is offered is beyond common knowledge, so that a juror is in need of the assistance of an expert to evaluate the matter intelligently"); *see also Morin Bldg. Products Co., Inc. v. Atlantic Design and Constr. Co., Inc.*, 615 A.2d 239, 241 (Me. 1992) (precluding corporate officer from testifying as to depreciation in value of structure due to defective work because the witness demonstrated "no knowledge that would qualify him to express an opinion as to the quality or adequacy of [defendant's] work or materials used or as to the cost of any labor or materials that may be necessary to correct any of the defects claimed").

In any event, because the plaintiffs have made a sufficient showing regarding remediation costs to withstand summary judgment for defendant, but not a sufficient showing

---

[3] The Wests also testified that they did not know what the property was worth on the day before the accident and do not know the value of the property following the accident. (K West Dep. 51:23-52:1, 110:8-13; E West Dep. 54:16-19, 110:18-111:1.)

13

to garner summary judgment in their own favor, both parties' motions will be denied as to this issue.

## II. Conclusion

For the reasons discussed, it is ORDERED AS FOLLOWS:

1. Plaintiffs' motion for summary judgment is denied.

2. Defendant's motion for summary judgment is denied, as it relates to plaintiffs' common law trespass claim and plaintiffs' damages.

3. Counsel are requested to report on the status of the Paul Nestor deposition, which has apparently not been held despite the passage of months since it was first noticed. If that deposition does not take place by June 15, 2017, the court will schedule a further conference at which the parties may present their positions on whether the remainder of the defendant's motion for summary judgment should be set for further briefing, or should be denied without further briefing, so that the case can proceed in any case.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: May 1, 2017

_____
A.M. Horton
Justice, Superior Court

14

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101


STEPHEN ALEXANDER BELL, ESQ
MUNDHENK & BELL LLC
PO BOX 792
PORTLAND, ME 04101-0792

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

GAVIN MCCARTHY, ESQ
KATHERINE KAYATTA, ESQ
PIERCE ATWOOD
MERRILLS WHARF
254 COMMERCIAL ST
PORTLAND, ME 04101

STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC-RE-15-247

ERIK WEST, KATHLEEN WEST,
JOHN PRIDE, and JOANN PRIDE,

       Plaintiffs,

       v.

JEWETT & NOONAN
TRANSPORTATION, INC.,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

STATE OF MAINE
Cumberland ss Clerk's Office

SEP 0 8 2016

RECEIVED

## ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Jewett & Noonan Transportation, Inc. has moved for partial summary judgment on Plaintiffs Erik West, Kathleen West, John Pride, and Joann Pride's claims for statutory trespass and punitive damages.

Oral argument was held today, with attorneys McCarthy and Bell participating. The oral argument was recorded. Based on the entire record, Defendant's motion for partial summary judgment is granted as to the statutory trespass claim in Count II of the Complaint, and denied without prejudice as to the Plaintiffs' claim for punitive damages.

### I. Background

The following facts are not in dispute. On June 11, 2014, a transport tanker truck owned and operated by Defendant rolled over in a traffic circle connecting Routes 112 and 114 in Gorham, Maine. (Def. Supp. S.M.F. ¶ 1; Pls. Opp. S.M.F. ¶ 1.) As a result, nearly 9,000 gallons of petroleum products were released. (Pls. Add'l S.M.F. ¶ 6; Def. Reply S.M.F. ¶ 6.) Some of the petroleum product migrated onto property owned by Plaintiffs. (Def. Supp. S.M.F. ¶ 2; Pls. Opp. S.M.F. ¶ 2.) Though Defendant took immediate steps to remediate the spill on Plaintiffs' property, soil testing showed the presence of oil above the Maine Department of

1

Environmental Protection's ("DEP") safety standards. (Pls. Add'l S.M.F. ¶¶ 8-9; Def. Reply S.M.F. ¶¶ 8-9.) In January 2015, Defendant submitted a proposed remedial action plan to DEP outlining a number of remediation options. (*Id.* ¶ 10.) DEP requested that Defendant remove all contaminated soil from Plaintiffs' property. (Def. Supp. S.M.F. ¶ 3; Pls. Opp. S.M.F. ¶ 3.) DEP set a deadline of July 1, 2015, for Defendant to complete the removal of all contaminated soil. (*Id.*) However, removal of the contaminated soil never occurred. Defendant asserts that Plaintiffs never provided it with authorization to access their property to conduct the excavation. Plaintiffs assert that Defendant never provided them with information regarding the work to be done on their property. DEP subsequently determined that no further remediation or excavation was required. (Def. Supp. S.M.F. ¶ 14; Pls. Opp. S.M.F. ¶ 14.)

On December 7, 2015, Plaintiffs filed a complaint against Defendant asserting claims for common law trespass, statutory trespass, negligence, nuisance, and strict liability. (Compl. ¶¶ 28-50.) Plaintiffs' complaint sought compensatory damages, double damages, punitive damages, injunctive relief, as well as attorney's fees and costs. (Compl. 8.) On March 26, 2016, Defendant filed this motion of partial summary judgment on Plaintiffs' claim for statutory trespass and their demand for punitive damages.[1] (Def. Mot. Summ. J. 4.) Plaintiffs filed their opposition on April 13, 2016. Defendant filed its reply on April 25, 2016. Resolution of the motion was delayed for several months due to difficulty in scheduling oral argument.

---

[1] Defendant's motion for summary judgment also asserted that Plaintiff Erik West had not established an ownership interest in the property in order to have standing to pursue this action. (Def. Mot. Summ.

2

*II. Analysis*

A.   Standard of Review

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of material fact exists when the [fact finder] must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

If the moving party's motion for summary judgment is properly supported, the burden shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e). "To withstand a motion for summary judgment, the plaintiff must establish a prima facie case for each element of their cause of action." *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897 (internal citation and quotation marks omitted). If a plaintiff fails to present sufficient evidence on the essential elements, then the defendant is entitled to a summary judgment. *Id.*

B.   Statutory Trespass

Statutory interpretation is a question of law for the court to decide. *Liberty Ins. Underwriters, Inc. v. Estate of Faulkner*, 2008 ME 149, ¶ 15, 957 A.2d 94. When interpreting a statute, the court's goal is to effectuate the Legislature's intent. *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621. In order to effectuate the Legislature's intent, the court must first determine whether the statutory language is plain and unambiguous. *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621. In determining the plain meaning of statutory

3

language, court must take into account the subject matter and purposes of the statute. *Id.* ¶ 21. The court must also take into account the design, structure, and overall purpose of the language used. *Id.* ¶ 22. "In the absence of legislative definitions, we afford terms their plain, common, and ordinary meaning." *Id.* If the statute is unambiguous the court looks no further; the court examines other indicia of legislative intent only when the plain language of the statute is ambiguous. *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me. 1994).

Count II of Plaintiffs' complaint is a claim for statutory trespass pursuant to 14 M.R.S. § 7551-B. (Compl. ¶¶ 32-36.) Section 7551-B provides:

> **1. Prohibition** *"A person who intentionally enters the land of another* without permission" and causes damage to property is liable to the owner in a civil action if the person:
> A. Damages or throws down any fence, bar or gate; leaves a gate open; breaks glass; damages any road, drainage ditch, culvert, bridge, sign or paint marking; or does other damage to any structure on property not that person's own; or
> B. Throws, drops, deposits, discards, dumps or otherwise disposes of litter, as defined in Title 17, section 2263, subsection 2, in any manner or amount, on property not that person's own.
>
> **2. Liability.** If the damage to the property is caused intentionally, the person is liable to the owner for 2 times the owner's actual damages plus any additional costs recoverable under subsection 3, paragraphs B and C. If the damage to the property is not caused intentionally, the person is liable to the owner for the owner's actual damages plus any additional costs recoverable under subsection 3, paragraphs B and C.

14 M.R.S. § 7551-B (italics supplied).

Defendant admits that its transport tanker rolled over and released petroleum products onto Plaintiffs' property. (Def. Supp. S.M.F. ¶¶ 1-2.) However, Defendant asserts that Plaintiffs are not entitled to relief under §7551-B because Plaintiffs cannot produce any

4

evidence that an actual "person" entered their property or that such entry was intentional.[2] (Def. Mot. Summ. J. 5.)

In response, Plaintiffs do not assert that Defendant, as a legal person, entered upon Plaintiffs' property. Plaintiffs only assert that the petroleum products released from the tanker migrated onto their property. (Pls. Add'l S.M.F. ¶ 7.) Rather, Plaintiffs make three arguments.

First, Plaintiffs argue, "it is well established at common law that a person trespasses by causing an item to enter the property." (Pls. Opp'n to Def. Mot. Summ. J. 10.) Plaintiffs further argue that "[t]here is no reason to believe that the Legislature intended to depart from well established common law[.]" (*Id.*) However, the statute presumably was enacted in order to supplement or modify otherwise applicable common law rules.

Second, Plaintiffs assert that they have had no opportunity conduct discovery regarding Defendant's intent and precisely what occurred that led to the tanker spill. (*Id.*) Thus, Plaintiffs are essentially arguing that, because there has been no discovery on these issues, there remain genuine issues of material fact regarding whether Defendant intentionally caused the tanker to roll over and release petroleum products onto Plaintiffs' property. At oral argument, Plaintiffs did not proffer any new facts on this issue.

Third, Plaintiffs argue that, under the § 161 of the *Restatement (Second) of Torts*, "it is well established that an intentional failure to remove property from land is sufficient to establish the necessary intent even if entry was not intentional." (*Id.* at 10-11.)

Plaintiffs are correct that, under the common law, a person can commit trespass by causing an item to enter the property of another. *See Medeika v. Watts*, 2008 ME 163, ¶ 5, 957 A.2d 980. However, the plain and unambiguous language of § 7551-B is clearly more limited

---

[2] Defendant concedes that, as a corporate entity, it is a "person" for purposes of 14 M.R.S. § 7551-B. (Def. Mot. Summ. J. 5.)

5

than the common law. Section 7551-B plainly and unambiguously applies to only "[a] *person who intentionally enters the land of another* without permission and causes damage." 14 M.R.S. § 7551-B(1) (emphasis supplied). If the Legislature had intended for § 7551-B to be as expansive as common law trespass, it would have used language indicating that it applied to both a person who intentionally enters the land of another or causes an item to enter the land of another without permission and causes damage. Plaintiffs have set forth no facts that "a person" entered upon their land.

Additionally, § 7551-B plainly and unambiguously applies to only a person who "*intentionally enters the land of another* without permission and causes damage." 14 M.R.S. § 7551-B(1) (emphasis supplied). Thus, under the plain language of the § 7551-B, the intent required to impose liability for statutory trespass is intent "to enter the land of another" without permission. There are no facts in the record indicating the Defendant acted with any intent to enter Plaintiffs' land. Lastly, Plaintiffs are correct that § 161 of the *Restatement* states that failure to remove a structure, chattel, or thing tortiously placed on another's land may constitute a trespass. Restatement (Second) of Torts § 161(1) (1979). However, in interpreting § 7551-B, the court is bound by the plain and unambiguous language of the statute, which is clearly more limited than the *Restatement* in requiring that the entry itself, rather than the failure to remove, be intentional.

Therefore, because Plaintiffs have failed to set forth any material facts demonstrating that "a person" entered their land or that Defendant acted with the requisite intent "to enter the land of another," Plaintiffs are not entitled to recover under 14 M.R.S. § 7551-B. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' claim for statutory trespass in Count II of the Complaint.

6

B.    Punitive Damages

In their prayer for relief, Plaintiffs seek punitive damages.  (Compl. 8.)  To recover punitive damages, a plaintiff must demonstrate "by clear and convincing evidence" that the defendant acted with malice.  *Laux v. Harrington*, 2012 ME 18, ¶ 35, 38 A.3d 318 (citation omitted).  To demonstrate malice, a plaintiff must prove either "that the defendant's conduct was motivated by actual ill will," or that the defendant's conduct was "so outrageous that malice is implied."  *Id.* (citation omitted).

Defendant argues that the record is devoid of any evidence of actual ill will on the part of Defendant or conduct that is "so outrageous" that malice could be inferred.  (Def. Mot. Summ. J. 7.)  According to Defendant, DEP requested that Defendant remove all contaminated soil on Plaintiffs' property by July 1, 2015.  (Def. Supp. S.M.F. ¶ 3.)  Defendant asserts that it attempted obtain Plaintiffs' approval to access their property to remove the contaminated soil.  According to Defendant, it notified Plaintiffs on April 28, 2015, that excavation work would need to start on May 4, 2015.  (*Id.* ¶ 4.)  On April 30, 2015, Defendant sent Plaintiffs an "Agreement for Site Access" to be signed by Plaintiffs.  (*Id.* ¶ 6.)  Defendant sent Plaintiffs a second Agreement for Site Access on May 15, 2015, and informed Plaintiffs that excavation could not begin without its completion.  (*Id.* ¶ 7.)  On May 20, 2015, Defendant again requested that Plaintiffs allow it site access to begin remediation.  (*Id.* ¶ 9.)  On June 2, 2015, Defendant suggested a meeting between the parties to discuss the remediation plan and to obtain a signed Agreement for Site Access from Plaintiffs.  (*Id.* ¶ 10.)  On July 21, 2015, Defendant again requested that Plaintiffs provide it with a signed Agreement for Site Access in order to begin remediation.  (*Id.* ¶¶ 11-12.)  Plaintiffs did not provide Defendant with a signed Agreement for Site Access.

In their additional statement of material facts, Plaintiffs admit that excavation was to begin by May 4, 2015, in order for Defendant to remove the contaminated soil and complete restoration by July 1, 2015, as required by DEP. (Pls. Add'l S.M.F. ¶ 11-12.) Plaintiffs admit that they had granted Defendant limited access to their property to place survey stakes at the limits of the excavation. (*Id.* ¶¶ 17-18.) On May 16, 2015, Plaintiffs responded to Defendant's May 15, 2015 request for signed copy of the Agreement for Site Access by informing Defendant that they would provide authorization for further work, so long as Defendant informed Plaintiffs what work would be done and when. (*Id.* ¶¶ 20-21.) Plaintiffs did not grant Defendant access, claiming that they had no information about the timing or nature of the excavation proposed. (*Id.* ¶ 23.) Plaintiffs admit that it also rejected Defendant's July 21, 2015 request for Plaintiffs to return a signed copy of the Agreement for Site Access, stating that it would provide an access agreement as soon as Defendant provided an explanation of the work to be done. (*Id.* ¶¶ 30-31.) On July 29, 2015, Plaintiffs granted Defendant's consultants access to their property to "mark out" the site to be excavated. (*Id.* ¶ 33.) The consultants conducted unauthorized testing of the soil and determined that the soil showed reduced concentrations of oil. (*Id.* ¶ 33-35.) Defendant admits that its consultants conducted unauthorized soil testing. (Def. Reply S.M.F. ¶¶ 33-35.)

Based on the content of the parties' statements of material facts, the court was inclined to grant the Defendant's motion as to the Plaintiffs' punitive damages claim, based on the absence of any admissible evidence of actual or implied malice. However, Plaintiffs proffered at oral argument an offer of proof in the form of a binder of indexed documents that attorney McCarthy indicated were obtained in discovery. These additional materials include documents that, if admitted into evidence and credited by the factfinder, could in the court's view bolster Plaintiffs' claim for punitive damages. The court indicated that it would re-open the Rule 56

process to allow Plaintiffs to supplement the record with the additional materials contained in their offer of proof. However, because Defendant intends to file a further motion for summary judgment as to additional counts of the Complaint, and Plaintiffs may also move for summary judgment on liability issues, and also because there is some discovery yet to be taken relevant to the validity of the punitive damages claim, it is more efficient for the punitive damages issues to be subsumed within that round of motions.

Accordingly, this Order will dismiss the portion of Defendant's Motion for Partial Summary Judgment that relates to punitive damages without prejudice to its renewal in a further motion. This means that some discovery that is relevant only if the Plaintiffs' punitive damages claim survives summary judgment will be deferred until after the court's ruling on whether the claim does survive. Also, the deposition of an out-of-state witness will need to be taken after the discovery deadline, because the witness will not appear without a subpoena issued by the court in that jurisdiction.

### III. Conclusion

It is hereby ORDERED AND ADJUDGED AS FOLLOWS:

Defendant Jewett & Noonan Transportation, Inc.'s Motion for Partial Summary Judgment is granted in part. Defendant is granted summary judgment on Count II of Plaintiffs' complaint, for statutory trespass. The motion is dismissed without prejudice as to Plaintiffs' claim for punitive damages, and may be renewed.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated September 8, 2016

_____
A.M. Horton
Justice, Superior Court

9