J-A18043-23; J-A18044-23; J-A18045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.E, A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 234 WDA 2023 |

Appeal from the Order Entered February 8, 2023
In the Court of Common Pleas of Erie County Juvenile Division at No(s):
CP-25-DP-0000010-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: L.B., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 235 WDA 2023 |

Appeal from the Order Dated February 8, 2023
In the Court of Common Pleas of Erie County Juvenile Division at No(s):
CP-25-DP-0000160-2011

| | | |
|---|---|---|
| IN THE INTEREST OF: R.E., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 236 WDA 2023 |

Appeal from the Order Dated February 8, 2023
In the Court of Common Pleas of Erie County Juvenile Division at No(s):
CP-25-DP-0000011-2023

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED:  September 12, 2023**

In this consolidated matter, C.H. (Mother) appeals the orders of the Erie County Court of Common Pleas (juvenile court), which adopted the recommendation of the hearing officer and adjudicated dependent Mother's 2-year-old son, A.E., her 11-year-old daughter, L.B., and her 3-year-old son, R.E. (the Children), pursuant to the Juvenile Act.  *See* 42 Pa.C.S.A. § 6302(1).  Mother also appeals the decision of the juvenile court to remove the Children from her care.[1]  After review, we affirm.

The relevant factual and procedural history is as follows.  The Erie County Office of Children & Youth (the Agency) first became involved with the family over a decade ago.  In March 2022, the Agency removed from Mother's care J.E., a non-subject child.  This child was returned to Mother's care in December 2022.  On January 10, 2023, the Agency received an allegation that Mother was engaging in inappropriate conduct and discipline of the Children.  On January 15, 2023, the Agency received a report that Mother was intoxicated at a friend's house and acted erratically – specifically, that she choked an 8-year-old child and dropped that child's 1-year-old sibling in the snow.  The next day, the Agency received a report that Mother

> leaves her Children home alone while she goes shopping, the Children are left in soiled diapers, and that Mother is

---

[1] None of the Children's respective fathers appeared for the dependency proceedings.  They do not appeal.

verbally abusive towards the Children. Mother has not been consistent with her court-ordered services for her [non-subject] son, J.E. Mother has not consistently attended drug and alcohol treatment or shown improvements regarding her mental health. Mother is not following through with recommended services for her Children, specifically early intervention [services] for all three boys in her home.

Trial Court Opinion, 3/28/23, at 2-3 (quoting Application for Emergency Protective Order) (style adjusted).

The Agency obtained an emergency protective order, which removed the Children from Mother's care pending adjudication. On January 23, 2023, the Agency filed dependency petitions for each of the three subject Children. In addition to the allegations set forth above, the Agency also alleged:

> Mother has not ensured A.E.'s educational and developmental needs are met. […] A.E. was set up with occupational therapy and [a] behavioral specialist, but Mother has not taken A.E. for an appointment since December 14, 2022. A.E.[, who is two years old] is non-verbal and in need of speech therapy, but the provider was unable to contact Mother, and she did not follow through with securing the service.
>
> Mother has not ensured R.E.'s educational and developmental needs are met. […] R.E [who is three years old] was recently diagnosed with Autism Spectrum Disorder. It was recommended that R.E. obtain service coordination services but Mother has neglected to contact Erie County Care Management to set this up. R.E. is observed to engage in severe tantrums and head banging in the home.
>
> Mother has a history of substance abuse. Mother has been diagnosed with cannabis-related disorder/cannabis dependence. Mother tested positive for marijuana at the [births of the two younger Children]. Mother was kicked out of the Esper Treatment Center in July 2022 due to her behavior and has not been able to consistently participate in urine screens. Mother has been observed to behave

- 3 -

> erratically and there are concerns that Mother continues to abuse substances.
>
> Mother has an extensive history with the Agency dating back to 2011 for inappropriate discipline, lack of supervision, substance abuse, untreated mental health, and lack of medical care. The January 17, 2023 incident is the family's 27th referral.

T.C.O. at 3-4 (citing Dependency Petitions, 1/23/23, at 3-4) (style adjusted).

The Children's adjudicatory hearing was held before the hearing officer. Mother was present and represented by counsel. None of the Children's three respective Fathers appeared. The hearing officer determined that the allegations in the dependency petitions were largely substantiated and thus recommended that the Children be adjudicated dependent pursuant to 42 Pa.C.S.A. § 6302(1). However, the hearing officer deferred disposition to the juvenile court. Mother did not challenge the hearing officer's findings or recommendation directly to the juvenile court.

The juvenile court conducted the dispositional hearing on February 6, 2023. After a hearing, the court adjudicated the Children dependent after accepting the hearing officer's findings and recommendation. As for the disposition, the court determined that it was in the best interest of the Children that they should be formally removed from Mother's care – *i.e.*, remain in foster care placement. *See* Dispositional Orders, 2/7/23.

Mother timely-filed these appeals. She presents the following issues for our review:

> 1. Whether the juvenile court committed an abuse of discretion and/or error of law when it determined that

> the Agency established, by clear and convincing evidence, that the minor Children are dependent Children under 42 Pa.C.S.A. § 6302?
>
> 2. Whether the juvenile court committed an abuse of discretion and/or error of law when it determined that it is in the Children's best interest to be removed from Mother's home?

Mother's Brief at 5 (style adjusted)

Before we address the merits of Mother's appeals, we note that the juvenile court and the Agency believe the appeals should be quashed, because Mother failed to challenge the hearing officer's dependency findings and recommendation directly to the juvenile court. Instead, Mother waited until the juvenile court issued its dispositional order, at which point Mother appealed both issues: 1) the juvenile court's adoption of the hearing officer's dependency recommendation; and 2) the juvenile court's dispositional order, which removed the Children from Mother's care. It is the understanding of both the Agency and juvenile court that Mother could not appeal the juvenile court's adoption of the hearing officer's dependency recommendation, without first contesting the hearing officer's recommendation in the lower court. **See generally** T.C.O. at 8-9; **see also** Agency's Brief at 14-15. This is incorrect.

A hearing officer may hear a dependency petition. **See** 42 Pa.C.S.A. § 6305(b); **see also** Pa.R.J.C.P. 1185 **cf.** Pa.R.J.C.P. 1187(A).[2] "At the

---

[2] Rule 1187(A) provides: "A juvenile court hearing officer shall not have the authority to: (1) preside over: (a) termination of parental right hearings; (b) adoptions; (c) any hearing in which any party seeks to establish a permanency goal of adoption or change the permanency goal to adoption; (2) enter orders
*(Footnote Continued Next Page)*

conclusion of the hearing, the [] hearing officer shall announce in open court on the record, the [] hearing officer's findings and recommendation to the judge." Pa.R.J.C.P. 1191(A). "A party *may* challenge the [] hearing officer's recommendation by filing a motion[.] The motion shall request a rehearing by the judge and aver reasons for the challenge." Pa.R.J.C.P. 1191(C) (emphasis added). "Within seven days of receipt of the [] hearing officer's findings and recommendation, the judge shall review the findings and recommendation of the [] hearing officer and: (1) accept the recommendation by order; (2) reject the recommendation and issue an order with a different disposition; (3) send the recommendation back to the [] hearing officer for more specific findings; or (4) conduct a rehearing." Pa.R.J.C.P. 1191(D).

Generally speaking, parties may not raise issues for the first time on appeal. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in the lower court). However, in *In interest of J.P.*, 178 A.3d 861, 865 (Pa. Super. 2018), this Court concluded that a party's failure to challenge the hearing officer's recommendation to the juvenile court, pursuant to Rule 1191(C), was not cause for waiver. "Rule 1191 does not require a party to challenge a [hearing officer's] recommendation, but provides that a party 'may' file a motion to request a rehearing before the trial court." *J.P.*, 178 A.3d at 865. The Juvenile Act provides that "[a] rehearing before the judge may be ordered by the judge at any time upon cause shown. Unless a

_____

for emergency or protective custody pursuant to Rules 1200 and 1210; (3) issue warrants; and (4) issue contempt orders." Pa.R.J.C.P. 1187(A).

rehearing is ordered, the findings and recommendation [of the hearing officer] become the findings and order of the court when confirmed in writing by the judge." *Id.* (citing 42 Pa.C.S.A. § 6305(d)). We have held that "neither the Juvenile Act, nor the Rules of Juvenile Court Procedure, provides that parties have a right to a rehearing [before a juvenile court judge] after a dependency hearing before [a hearing officer]. The Juvenile Act provides that a court '*may*' order a rehearing, but only upon cause shown." *Id.* (citations omitted) (emphasis added). Therefore, in light of our prior decision in *J.P.*, we conclude that Mother may properly appeal the dependency adjudication without first seeking relief before the juvenile court under Pa.R.J.C.P. 1191(C). Our review of Mother's appeals is not impeded, because the Agency and the juvenile court prudently addressed the merits of Mother's appeals, notwithstanding their belief that the appeals should be quashed.[3]

_____

[3] The juvenile court was correct in one respect, however. Mother initially appealed from the wrong order.

The Juvenile Act anticipates a two-step process: first, the court decides whether a child is dependent; if so, the court then decides the appropriate disposition – *i.e.*, whether the child should be removed from the parents' care. *See, e.g., Interest of J.M.*, 219 A.3d 645 (Pa. Super. 2019); *see also* 42 Pa.C.S.A. § 6341(a), (c); *and see* 42 Pa.C.S.A. § 6351. It is the dispositional aspect, however, that renders the adjudication a final appealable order. *Id.*

Here, the adjudicatory order was issued two days before the dispositional order. Mother initially appealed the juvenile court's adoption of the hearing officer's recommendation that the Children be adjudicated dependent. *See* Order of Court, dated February 6, 2023. Mother should have instead appealed the dispositional order. *See* Order of Court, dated February 8, 2023). Mother's appeal, though defective, was nevertheless timely. Moreover, it was
*(Footnote Continued Next Page)*

Having concluded that Mother's appeals are properly before us, we next address the merits of Mother's appeals. We review dependency decisions for an abuse of discretion. The standard "requires an appellate court to accept the findings of fact and credibility determinations of the juvenile court if they are supported by the record, but it does not require the appellate court to accept the juvenile court's inferences or conclusions of law." ***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010).

In her first appellate issue, Mother argues the juvenile court erred when it accepted the hearing officer's recommendation that the Children be adjudicated dependent. Mother reasons that the Agency failed to establish, by clear and convincing evidence, that the Children were without proper parental care. To adjudicate a child dependent, the court must determine, by clear and convincing evidence, that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

---

clear that Mother always meant to challenge both issues. This Court ordered Mother to cure the defect, and Mother subsequently complied.

Before this Court could *sua sponte* consolidate Mother's appeals, Mother filed three separate briefs – one for each Child – but which all contain identical issues. The juvenile court addressed each appeal in one Pa.R.A.P. 1925(a) opinion. In the interest of judicial economy, we also address Mother's appeals in one decision.

42 Pa.C.S.A. § 6302(1).

"Clear and convincing evidence" is defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Interest of L.V.*, 209 A.3d 399, 416 (Pa. Super. 2019) (citation omitted).

> In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," *see* 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available. This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child."

*L.V.*, 209 A.3d at 416 (internal citations omitted).

In its Rule 1925(a) opinion, the juvenile court thoroughly explained its basis for accepting the hearing officer's findings and recommendation. Specifically, the court tracked the hearing officer's findings as they corresponded with each allegation set forth in the dependency petitions. The juvenile court stated:

> The hearing officer's recommendation that the Children were dependent Children was based on clear and convincing evidence established at the hearing that substantiated the allegations set forth in the dependency petition[s]. The hearing officer's findings of fact are as follows:
>
> > Supporting testimony for the allegations set forth in the dependency petition[s] was provided by [the Agency caseworker], and those allegations were substantiated. Mother appeared, with counsel, and stipulated only to the allegation set forth in

the Petition at Paragraph 1A(b). The Agency presented supporting testimony for the remainder of the allegations in Paragraph 1A(c), the Agency was only able to verify that the Children are left home alone. The Agency did not present testimony or evidence to sustain the allegations of the Mother's alleged prior convictions or the timeframe of them.

Recommendations for Adjudication, 2/2/23.

Mother stipulated that on January 15, 2023, "she choked an 8-year-old child and dropped the child's one-year-old sibling in the snow" while she was intoxicated. Dependency Petition, 1/23/23 at ¶ 1A(b). [Mother] also agreed that when the police arrived she was acting erratically. Further, the hearing officer found clear and convincing evidence that Mother leaves the Children home alone. Quite significant, the hearing officer found that "the Agency presented supporting testimony for the remainder of the allegations…" These allegations were set forth in the remaining paragraphs of the dependency petitions are Paragraphs 1A(d), 1A(e), and 1A(f) and incorporated in the recommendation of adjudication. These paragraphs noted that Mother has a history of mental health diagnoses including major depressive disorder, anxiety disorder, and conduct disorder. Also, Paragraph 1A(e) states that Mother has a history of substance abuse and has been diagnosed with cannabis-related disorder/cannabis dependence. In fact, Mother tested positive for marijuana at the time of two of the Children's births. Furthermore, Mother was "kicked" out of the Esper Treatment Center in July 2022 because of her "behaviors." Mother was observed behaving erratically and there are concerns about her continued substance abuse.

Finally, Paragraph 1A(f) states:

> Mother has an extensive history with the Agency dating back to 2011 for inappropriate discipline, lack of supervision, substance abuse, untreated mental health, and lack of medical care. The January 17, 2023 incident is the family's 27th referral.

- 10 -

> [...] The family has open [*sic*] for ongoing services since March 28, 2022, Mother was determined to be an Indicated Perpetrator for Creating a Likelihood of Bodily Injury or Impairment Through a Recent Act regarding a sibling.
>
> Dependency Petitions, 1/23/23 at ¶ 1(A(f)
>
> [...]
>
> Cumulatively, the hearing officer's findings were upheld by the juvenile court and established by clear and convincing evidence that the Children are without proper parental care or control as it pertains to Mother.

T.C.O. at 14 (style adjusted) (some citations to the record omitted).

On appeal, Mother simply states that the record "failed to support a conclusion that the [] Children are without proper parental care or control[.]" *See* Mother's Brief at 16. We disagree.

First, we note the careful analysis of both the hearing officer and the trial court, which disregarded those allegations that could not be substantiated by the Agency – e.g., Mother's alleged criminal history. The hearing officer's recommendation was based solely on the facts to which Mother stipulated and the facts that the Agency proved *via* the caseworker's testimony.

Second, we recognize the juvenile court's emphasis on the "cumulative" nature of the findings. It was the totality of the findings that comprised the clear and convincing evidence of dependency. For instance, the court did not conclude that the Children were dependent merely because Mother used marijuana. Nor did the court rest on "the fact" that Mother had been "indicated as a perpetrator for creating a likelihood of bodily injury" to a

sibling, which we take to mean that the Agency "indicated" Mother as a perpetrator under the Child Protective Services Law (CPSL). *See* 23 Pa.C.S.A. § 6303(a).

We remind the court that an "indicated" status is based on the Agency's own assessment. *See, e.g., J.F. v. Department of Human Services*, 245 A.3d 658, 660-61 (Pa. 2021).[4] An agency's own assessment that there was parental abuse or neglect is not, by itself, evidence of dependency in a juvenile court proceeding. A juvenile court should be cautious lest the court inadvertently outsource its fact-finding function to the very party petitioning for dependency. The facts underlying the agency's assessment may be the same facts supporting a court's dependency adjudication, so long as those facts are introduced in accordance with the Pennsylvania Rules of Evidence. Here, however, the court mentioned Mother's "indicated" status as an afterthought. The juvenile court ultimately determined that the cumulative evidence of dependency was clear and convincing. We discern no abuse of discretion. Mother's first appellate issue is without merit.

In her second appellate issue, Mother challenges the disposition of the Children by repeating the same argument. Again, she simply alleges the

---

[4] An "indicated" report is one wherein the determination relies on the county agency's own assessment that their investigation revealed "substantial evidence of the alleged abuse by a perpetrator exists based on" available medical records, the child protective services investigation, or an admission of the acts of abuse by the perpetrator. *See* 23 Pa.C.S.A. § 6303(a)(definition of "indicated report").

record does not support the juvenile court's decision to remove the Children from her home. *See* Mother's Brief at 16-17.

In *In re D.A.*, *A Minor*, 801 A.2d 614 (Pa. Super. 2002) (*en banc*), this Court explained:

> If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S.A. § 6351(a).

*Id.* at 617 (citation omitted); *see also In re M.L.*, 757 A.2d 849, 850-51 (Pa. 2000).

Even after a child has been adjudicated dependent, however, a court may not separate that child from the parent unless it finds that the separation is clearly necessary. *Interest of N.S.*, 237 A.3d 546, 551 (Pa. Super. 2020) (citing 42 Pa.C.S.A. § 6301(b) (relating to the Juvenile Act's purpose to keeping families together)).  Such necessity is implicated where the welfare of the child demands that they be taken from their parents' custody. *N.S.*, 237 A.3d at 551 (citation omitted).  "Clear necessity" is established when the court determines that alternatives are not feasible. *Id.* (citing *A.N. v. A.N.*, 38 A.3d 326 (Pa. Super. 2012)).

Upon our review, we conclude the record supports the juvenile court's decision to remove the Children.  We specifically note that the two youngest Children have special needs.  Mother has not addressed those needs, even

though resources have been made available to her. Instead, Mother has left these Children in the care of their 11-year-old sibling. Mother's struggles with her mental health and substance abuse might explain why Mother has thus far not engaged with the offered services. In any event, the juvenile court could not ensure the safety of the Children if they were to remain in Mother's care. The court did not abuse its discretion when it determined that there was clear necessity to remove the Children from the home. Mother's issues have been ongoing for some time. The record supports the finding that alternatives to removal were not feasible. Mother's second issue is also without merit.

Orders affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/12/2023